IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEW CENTURY BANK d/b/a | : | CIVIL ACTION |
| CUSTOMERS BANK | : | |
| | : | |
| v. | : | |
| | : | |
| OPEN SOLUTIONS, INC. | : | NO. 10-6537 |

MEMORANDUM

Bartle, C.J.                                             January 25, 2010

Plaintiff, New Century Bank, doing business as Customers Bank ("Customers"), has filed suit against defendant Open Solutions, Inc. ("OSI") for conversion, replevin, and declaratory relief related to certain of Customers' customer data files. OSI's answer asserts a counterclaim against Customers for breach of contract and declaratory relief. Before the court is the motion of Customers to dismiss Counts I and II of the counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

I.

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true all factual allegations in the pleading and draws all inferences in the light most favorable to the nonmoving party. Phillips v.

---

1. OSI has asserted a Count III in its counterclaim for breach of a settlement agreement. That count is not the subject of Customers' motion to dismiss.

Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  We then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "'mere possibility of misconduct.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950).  In deciding a motion to dismiss under Rule 12(b)(6), the court may consider "an undisputedly authentic" document upon which a party explicitly relies in pleading its claims, whether or not the document is attached to the challenged pleading.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425-26 (3d Cir. 1997) (quoting In re Donald J. Trump Casinos Sec. Litig., 7 F.3d 357, 368 (3d Cir. 1993)).

II.

According to the counterclaim, OSI acquired a company that had a 2005 contract with USA Bank to perform data processing services ("2005 USA Bank contract").  In 2008, OSI and USA Bank entered into a second agreement in which OSI agreed to perform additional data processing services for USA Bank ("2008 USA Bank contract").  Under both the 2005 and 2008 contracts (collectively, the "USA Bank contracts"), OSI was entitled to receive payment for any "deconversion" it performed before delivering customer files to USA Bank.  "Deconversion" is not explicitly defined in the counterclaim or the complaint, but the

pleadings suggest it refers to a process for translating electronically stored data from a format uniquely readable with OSI software into a format Customers can use without OSI software.

USA Bank failed and was closed, and the FDIC was appointed receiver. On or about July 9, 2010, the FDIC and Customers entered into a Purchase and Assumption Agreement ("Purchase Agreement") in which Customers acquired substantially all of USA Bank's assets.

OSI avers that § 4.8 of the Purchase Agreement required Customers to give the FDIC notice within 30 days of USA Bank's closing as to whether Customers would or would not assume the two contracts between USA Bank and OSI. With certain exceptions not relevant here, § 4.8 applies "to agreements existing as of [USA Bank's] Closing which provide for the rendering of services by or to [USA Bank]." Section 4.8 further provides that Customers "shall be deemed by the [FDIC] to have assumed agreements for which no notification is timely given." The FDIC purportedly never extended the 30-day deadline for Customers to make an election under § 4.8, and Customers failed to notify the FDIC within that time that it would not assume the USA Bank contracts. According to OSI's counterclaim, Customers assumed both USA Bank contracts through its failure to give the FDIC notice within the 30-day period.

The counterclaim recounts that on November 3, 2010, well beyond the 30 day deadline in § 4.8, Customers notified the

FDIC that it was electing not to assume the 2008 USA Bank contract.  On November 9, 2010, the FDIC notified OSI that the 2008 USA Bank contract was being repudiated effective February 3, 2011.

In Count I of the counterclaim, OSI alleges that Customers breached the USA Bank contracts "by demanding that [OSI] perform deconversion services without paying all amounts due under the agreements" and also by wrongfully claiming that the contracts have been repudiated.  Count II of the counterclaim seeks a declaration that Customers assumed the USA Bank contracts and is obligated to comply with those agreements.

### III.

In support of its motion to dismiss, Customers argues that OSI lacks standing to pursue its breach of contract and declaratory judgment claims because OSI was not a party to the Purchase Agreement between Customers and the FDIC.  In essence, Customers asserts that OSI cannot base its counterclaims on rights or duties defined in a contract to which it is not a party.  In Customers' view, any failure to provide the FDIC with a notice contemplated in the Purchase Agreement is a contractual matter between FDIC and Customers that creates no right OSI can enforce.  Customers relies on § 13.5 of the Purchase Agreement, which states that the obligations and responsibilities recited in the Purchase Agreement are for the benefit of the FDIC and Customer and for no other person.

Customers' argument misses the mark.  OSI is asserting claims under two USA Bank contracts to which it is a party.  OSI alleges Customers is the successor to USA Bank.  In our view, OSI has standing to seek damages and a declaration of rights with respect to contracts it alleges it has with Customers.  <u>See, e.g.</u>, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).

The case on which Customers chiefly relies, <u>Accardi Endeavors LLC v. F.D.I.C.</u>, does not support dismissal.  No. 8:10-839, 2010 WL 3123085, at *2-*4 (M.D. Fla. Aug. 9, 2010).  In that case, a purchasing bank notified the FDIC of its decision not to assume a lease between the failed bank and the plaintiff property owner after what the property owner claimed was the period during which the purchasing bank had the right to avoid the lease.  The FDIC subsequently repudiated the lease, and the property owner sued the FDIC and the purchasing bank for rent owed under the lease.  The court dismissed claims for declaratory relief and breach of contract against the purchasing bank on the grounds that the property owner lacked standing.  The court noted, however, that under the purchase agreement, the purchasing bank's "failure to act within the [exclusive option period] did not serve as an automatic assumption of the Lease."  <u>Id.</u> at *4.  In contrast, OSI asserts that under the "automatic assumption" provision of § 4.8 of the Purchase Agreement, Customers assumed the USA Bank contracts.

In a case in which a term akin to an automatic assumption provision applied, the court found the plaintiff had

standing to sue for breach of contract. 290 at 71, LLC v. JPMorgan Chase Bank, No. 09-576, 2009 WL 3784347, at *4-*6 (W.D. Tex. Nov. 9, 2009). There the failed bank had a lease with plaintiff of vacant land on which the failed bank had planned to build a branch office. Id. at *2-*3. The FDIC and the purchasing bank entered into a purchase agreement in which the assuming bank received a 90-day option to assume or not assume all leases for "bank premises." Id. The purchasing bank automatically assumed leases on all "other real estate." Id. Within the 90 day option period, the purchasing bank elected not to assume the failed bank's contract with the plaintiff, and the FDIC subsequently repudiated the lease. Id. The landowner sued the purchasing bank for breach of contract. The plaintiff relied on the terms of the purchase agreement to argue that the vacant land subject to lease did not meet the purchase agreement's definition of "bank premises," and as a result, must be classified as "other real estate." Id. at *3. In short, the plaintiff argued that the FDIC improperly repudiated a contract it had already assigned to the purchasing bank.

The purchasing bank and the FDIC (as an intervening defendant) moved for summary judgment. They contended that the plaintiff lacked standing to base its claim on rights or duties imposed in the purchase agreement because plaintiff was not a party to that agreement. Id. at *4. The court dismissed this argument as a "catch-22 that would keep Plaintiffs [sic] from asserting its rights under the Lease against the new lessee even

if a valid assignment of the Lease did occur." Id. Here, Customers cannot avoid its alleged liability on contracts with OSI by arguing that such liability arose, if at all, in a contract to which OSI is not a party. Accordingly, OSI has standing to assert its counterclaim.

Next, Customers argues that OSI misinterprets the Purchase Agreement. Customers insists that § 4.7 of the Purchase Agreement, not § 4.8, governs its rights and duties concerning the USA Bank contracts. Section 4.7 is entitled "Agreement with Respect to Data Processing Equipment and Leases" and grants Customers 90 days from the closing of USA Bank in which to exercise an exclusive option to "accept an assignment from the [FDIC] of all leased Data Processing Equipment" or to purchase "all owned Data Processing Equipment" at fair market value. Section 2 of the Purchase Agreement defines "Data Processing Equipment" as "any equipment, computer hardware, or computer software (or the lease or licensing agreements related thereto) other than Personal Computers, owned or leased by [USA Bank] ... which is, was, or could have been used by [USA Bank] in connection with data processing activities." Section 4.7 of the Purchase Agreement does not provide that Customers will be deemed to have assumed any data processing equipment leases or to have purchased data processing equipment if Customers fails to give the FDIC notice within 90 days.

Customers' argument that § 4.7 is the applicable provision of the Purchase Agreement is unpersuasive. Section 4.7

-7-

pertains only to data processing equipment and leases of such equipment. OSI's counterclaim asserts breach of contract claims with respect to two contracts with USA Bank. These USA Bank contracts concern the providing of services. The USA Bank contracts begin with OSI (or its predecessor) promising to "provide [USA Bank] ... the services selected by [USA Bank] from" a list of services offered. Section headings in the USA Bank contracts include "conversion to the services," "availability of the services," and "use of the services." The court has reviewed the substance of those sections[2] and finds that they define USA Bank's rights and duties with regard to data processing services OSI (or its predecessor) agreed to provide. Moreover, the amount that USA Bank owed OSI on a monthly basis was determined by the services it consumed. In fact, Customers' complaint refers to the USA Bank contracts in issue as "the Service Agreement."[3]

As noted above, § 4.8 of the Purchase Agreement on which OSI relies pertains "to agreements existing as of [USA Bank's] Closing which provide for the rendering of services by or to [USA Bank]." This section contains a 30-day automatic assumption provision. Under this provision, Customers' failure to notify the FDIC within 30 days that it will not assume a contract means Customers automatically assumes that contract.

---

2. The USA Bank contracts provide that section headings should not be used to construe the agreements.

3. Plaintiff's complaint does not define "Service Agreement," but it appears to refer to the USA Bank contracts.

Thus, § 4.8 governs Customers' rights with regard to the USA Bank contracts. For present purposes, we take as true the allegation in the OSI counterclaim that Customers assumed both USA Bank contracts.

Finally, Customers argues that OSI is attempting to circumvent the claims administration provisions of the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), and in particular, 12 U.S.C. § 1821. That section of FIRREA provides the FDIC with, among other things, the power to repudiate contracts a failed bank formed before the FDIC became receiver. Id. at § 1821(e). For "a reasonable period" after becoming receiver, the FDIC may repudiate a contract to which the failed bank was a party if the FDIC, in its discretion, determines that the contract is burdensome and that repudiation would promote "the orderly administration of the institution's affairs." Id. at § 1821(e)(1).[4] Congress has provided an exclusive framework that governs the FDIC's payment of claims to parties aggrieved by the FDIC's repudiation of a contract and has restricted jurisdiction of the federal courts to review the FDIC's refusal to pay a third-party's claim to circumstances not present in this case. Id. at §§ 1821(d)(6)(A), (13)(D); Fed. Deposit Ins. Corp. v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991).

---

4. Although the Purchase Agreement granted Customers the option of purchasing Data Processing Equipment and assuming leases on such equipment, the Purchase Agreement did not purport to convey the FDIC's statutory power of repudiation.

-9-

The statute on which plaintiff relies governs claims against the FDIC and this court's jurisdiction over the FDIC. The statute does not purport to address claims against banks that acquire assets from the FDIC or to limit this court's jurisdiction over such banks. See Lawson v. Fed. Deposit Ins. Corp., 3 F.3d 11, 14-15 (1st Cir. 1993). Further, in cases in which this court has applied the jurisdictional bar of § 1821, it has done so where the claim was asserted directly against the FDIC, not against a party who assumed a failed bank's contracts. See Samuels v. Acme Mkt., 845 F. Supp. 292, 293-94 (E.D. Pa. 1994); Decrosta v. Red Carpet Inns Int'l, Inc., 767 F. Supp. 694, 696 (E.D. Pa. 1991). OSI has not named the FDIC as a party and no reading of its claims suggests OSI seeks payment out of the USA Bank assets under the FDIC's control in its role as receiver. Customers has cited no authority stating that claims against a bank that purchases assets from the FDIC are barred by FIRREA. Holding Customers liable on the USA Bank contracts it allegedly assumed would not conflict with or subvert the claim provisions or jurisdictional limits of FIRREA.

Accordingly, motion of plaintiff New Century Bank, doing business as Customers Bank, to dismiss Counts I and II of the counterclaim of defendant Open Solutions, Inc. will be denied.