## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| **NEW CENTURY BANK d/b/a CUSTOMERS BANK** | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :     Civil Action No. 2:10-cv-06537-HB <br> : |
| **OPEN SOLUTIONS INC.** | : <br> : |
| Defendant. | : <br> : |

---

### MEMORANDUM OF LAW OF OPEN SOLUTIONS INC. IN OPPOSITION TO MOTION OF CUSTOMERS BANK TO AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW AND TO ALTER OR AMEND JUDGMENT, AND TO STAY ENFORCEMENT OF JUDGMENT

Defendant/counterclaim plaintiff, Open Solutions Inc. ("**Open Solutions**"), through its undersigned counsel, Fox Rothschild LLP, hereby submits this memorandum of law in opposition to the motion to amend findings of fact and conclusions of law and to alter or amend judgment pursuant to Federal Rules of Civil Procedure 52(b), 59(a)(2), and 59(e), and to stay enforcement of the judgment pursuant to Federal Rule of Civil Procedure 62 (the "**Motion to Amend**") filed by plaintiff/counterclaim defendant, New Century Bank d/b/a Customers Bank ("**Customers Bank**"):

## I.    <u>INTRODUCTION</u>

Now in its third iteration, Customers Bank's Motion to Amend trots out the *same* allegations, arguments and precedent which this Court has twice rejected – once in its January 25, 2011 Memorandum Opinion (Docket No. 23, the "**January 25 Decision**") and for a second time in its March 7, 2011 Findings of Fact and Conclusions of Law (Docket No. 53, the "**Findings and Conclusions**"). Customers Bank's Motion to Amend plows the same ground

covered in its previous motion for partial dismissal of Open Solutions' counterclaims (Docket No. 6, the "**Motion to Dismiss**"),  motion for reconsideration of the January 25 Decision (Docket No. 28, the "**Motion for Reconsideration**") and reply in support of Motion for Reconsideration (Docket No. 49, the "**Reply**").   Coupled with its repetitive nature, Customers Bank's Motion to Amend does not present any extraordinary circumstances that warrant departure from the Court's Findings and Conclusions.   Further, as demonstrated below, the Motion to Amend fails to establish a basis for a stay of the Judgment entered by the Court on March 7, 2011 (see Docket No. 55).   Accordingly, the Court should deny the Motion to Amend in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Customers Bank filed suit against Open Solutions and asserted purported claims for conversion, replevin and declaratory judgment.   See Complaint, Docket No. 1.   Open Solutions counterclaimed against Customers Bank for breach of contract and declaratory judgment.   See Answer with Affirmative Defenses and Counterclaims, Docket No. 3.   Open Solutions premised its counterclaims for breach of contract and declaratory judgment on Customers Bank's defaults under the Services Agreement entered into by BISYS Information Solutions L.P. ("**BISYS**")[1] and USA Bank[2], effective August 1, 2005 (the "**2005 Agreement**") and the Data Processing Services Agreement entered into by Open Solutions and USA Bank, effective December 31, 2008 (the "**2008 Agreement**") (collectively, the "**Agreements**").   After a trial on the merits on February 24, 2011, among others, the Court found the following facts:

- Customers Bank's correspondence with the FDIC specifically referred to Section 4.8 of the Purchase and Assumption Agreement, which provided a 30 day period

---

[1] In its Findings and Conclusions, the Court found that "Open Solutions is the successor in interest to BISYS."  See Findings and Conclusions at 3.

[2] USA Bank failed on July 9, 2010, and Customers Bank acquired substantially all of its assets by entering into a Purchase and Assumption Agreement with the FDIC.  See Findings and Conclusions at 1.

within which to reject or assume the 2005 and 2008 Agreements.  <u>See</u> Finding

and Conclusions at 17.

- References to Section 4.8 of the Purchase and Assumption Agreement in Customers Bank's correspondence with the FDIC were not simply "mistakes." "[T]hese purported mistakes carried through numerous drafts and FDIC review," and "Customers was not mistaken in its reference to § 4.8." <u>Id.</u> at 17 and n.5.

- Customers Bank "was <u>*fully aware*</u> of the 30-day deadline applicable under § 4.8 [of the Purchase and Assumption Agreement] to both the 2005 and 2008 Agreements.  It [Customers Bank] did not reject <u>*either*</u> the 2005 or 2008 Agreement within that time frame." <u>Id.</u> (emphasis added).

- "[I]t would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions] lacked standing to rely on the Purchase Agreement in pleading its claims." <u>Id.</u> at 10.

The Court also entered judgment that "Customers Bank has assumed and is bound by the contract between USA Bank and Open Solutions Inc.'s predecessor in interest, BYSIS, dated August 31, 2005 and by the contract between USA Bank and defendant Open Solutions Inc. dated December 31, 2008." <u>See</u> Judgment at ¶ 5.

## III.   <u>LEGAL ARGUMENT</u>

### A. Under The Law Of The Case Doctrine The Court Should Deny Customers Bank's Motion to Amend.

Because the Court's previous opinions reflect a careful consideration and decision on each of the issues raised in the Motion to Amend -- Open Solutions' standing to pursue its

counterclaims against Customers Bank, the import, if any, of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("**FIRREA**") for Open Solutions' counterclaims, and the interpretation of Section 4.7 and 4.8 of the Purchase and Assumption Agreement -- the law of the case doctrine precludes reopening and relitigating these issues.   With respect to Open Solutions' standing to pursue its counterclaims, the Court found that "OSI [Open Solutions] _has standing_ to seek damages and a declaration of rights with respect to contracts it alleges it has with Customers."   See January 25 Decision at 5 (emphasis added).   In its Findings and Conclusions, the Court denied Customers Bank's Motion for Reconsideration of the standing issue and confirmed its earlier ruling:

> The Court has also considered the arguments with regard to standing in Customers' motion for reconsideration and finds them unpersuasive. . . Since Customers' failure to provide notice within the time period specified in § 4.8 of the Purchase Agreement amounted to an assumption of those agreements, OSI [Open Solutions] may hold Customers accountable for breach of the assumed 2005 and 2008 Agreements.   Customers' motion for reconsideration will be denied, and judgment will be entered in favor of OSI [Open Solutions] on its declaratory judgment claim.

See Findings and Conclusions at 18-19.

Similarly, the Court has determined that "Customers' argument that § 4.7 is the applicable provision of the Purchase Agreement is unpersuasive" (see January 25 Decision at 7) and that "Section 4.7 of the Purchase Agreement, we reiterate, does not apply to the USA Bank's 2005 and 2008 Agreements with OSI [Open Solutions]."   See Findings and Conclusions at 17. With respect to relevance, if any, of FIRREA, the Court previously ruled, "[h]olding Customers liable on the USA Bank contracts [the 2005 and 2008 Agreements] it allegedly assumed would not conflict with or subvert the claim provisions or jurisdictional limits of FIRREA."   See January 25 Decision at 5.

The fact that the Court has already thoroughly considered and decided each of these issues "requires that [the Court] approach the instant Motion [to Amend] by considering the 'law of the case' doctrine and its implications . . . The law of the case doctrine is similar to the doctrine of *res judicata* or, alternative, claim and issue preclusion, in that it limits relitigation of an issue once it has been decided by the Court." Bosley v. The Chubb Inst., 516 F.Supp.2d 479, 484 (E.D. Pa. 2007); see also Int'l Poultry Processors, Inc. v. Wampler Foods, Inc., No. Civ. A. 98-CV-4612, 1999 WL 213369, *1 (E.D. Pa. Apr. 8, 1999), *aff'd*, 215 F.3d 13141 (3d. Cir. 2000) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation."). The law of the case doctrine "'prevents courts from entertaining endless appeals on the same issue, [and] the doctrine promotes finality and judicial economy.'" Bosley, 516 F.Supp.2d at 484 (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc. 123 F.3d 111, 116 (3d Cir. 1997)). Here, the Court should not review again issues that it previously decided, particularly given the fact that the Court analyzed most of these issues for a second time when the Court issued its Findings and Conclusions and denied Customers Bank's Motion for Reconsideration.

Moreover, while the Third Circuit does recognize certain "extraordinary circumstances" that constitute exceptions to the law of the case doctrine, none of those circumstances apply here. See Bosley, 516 F.Supp.2d at 484 (quoting Pub. Interest Research Group of N.J., Inc.). "Those circumstances include . . . '(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.'" Bosley, 516 F.Supp.2d at 484; see also Int'l Poultry Processors, Inc., 1999 WL 213369 at *2 (citation omitted). "Courts should 'be loathe to [reverse prior rulings] in the absence of extraordinary circumstances. . . .'" Int'l Union of Bricklayers and Allied

Craftworkers, Local 5 v. Banta Tile & Marble, Civil Action No. 07-1245, 2009 WL 4906525, *14 (M.D. Pa. Dec. 15, 2009).

*First*, in its Motion to Amend, Customers Bank does not point to any new evidence and its attempt to redirect the Court's attention to Section 13.5 ("Successors") of the Purchase and Assumption Agreement amounts to misdirection.  Customers Bank argues that the Court should alter or amend its Findings and Conclusions because they do not specifically refer to Section 13.5 of the Purchase and Assumption Agreement.  See Motion to Amend at 6.  The Court should reject Customer Banks' argument because it has been over this ground before (see e.g. Reply in Further Support of Motion to Dismiss at 3-4), the Court fully considered Section 13.5 (as well as Customers Bank's related arguments) and found "Customers' argument misses the mark."  See January 25 Decision at 5.  Further, Customer Banks' citation to Mr. Schoppe's testimony about the meaning of Section 13.5 does not carry any weight because the interpretation of an unambiguous contract is an issue of law for the Court to determine.  See e.g. SmartTran, Inc. v. Alpine Confections, Inc., 352 Fed.Appx. 650, 654-55 (3d Cir. 2009).

*Second*, in its Motion to Amend, Customers Bank cites to the same cases that it relied upon in previous filings with this Court.  Customers Bank does not point to any supervening *change* in the law.  See Int'l Union of Bricklayers and Allied Craftworkers, Local 5, 2009 WL 4906525 at *15.  The only new case cited by Customers Bank, Hindes v. FDIC, 137 F.3d 148 (3d Cir. 1998), is about the relevance, if any, of FIRREA, and Hindes does not apply to the circumstances presented here because the FDIC is not a party to these proceedings and is not affected by these proceedings.  In Hindes, the Third Circuit explained, "[o]ur opinion, however, should not be overread . . . We do not suggest that we would reach the same result in a case in which the effect on the FDIC of an order against a third party would be of little consequence to its overall functioning as receiver.  That type of situation is not before us."  Hindes, 137 F.3d at

6

161.  In its January 25 Decision, the Court was quite correct that FIRREA "does not purport to address claims against banks that acquire assets from the FDIC or to limit this court's jurisdiction over such banks.  Further, in cases in which this court has applied the jurisdictional bar of § 1821, it has done so where the claim was asserted *directly against the FDIC*, not against a party who assumed a failed bank's contracts."  See January 25 Decision at 10 (emphasis added, citing Samuels v. Acme Market, 845 F.Supp. 292, 293-94 (E.D. Pa. 1994); Decrosta v. Red Carpet Inns Int'l, Inc., 767 F.Supp 694, 696 (E.D. Pa. 1991)); see also Henrichs v. Valley View Devel., 474 F.3d 609, 614-15 (9th Cir. 2007) ( "because the FDIC was neither a party to the state court lawsuit nor did it retain an interest in the previously-assigned note, FIRREA does not confer exclusive federal jurisdiction over Henrich's claims.").  Here, Open Solutions "has not named the FDIC as a party and no reading of its claims suggest that OSI [Open Solutions] seeks payment out of the USA Bank assets under the FDIC's control in its role as receiver."  See January 25 Decision at 10.

*Third*, Customers Bank's Motion to Amend does not establish a clear error or manifest injustice.  From start to finish, this case has been about the consequences of Customer Bank's conduct under the Purchase and Assumption Agreement.  After considering all of the evidence, the Court properly determined, among other facts, that Customers Bank is bound by its own correspondence with the FDIC and, as a result, Section 4.8 of the Purchase and Assumption Agreement established the relevant deadline for rejecting the Agreements. Customers Bank failed to reject the Agreements in a timely manner.  Equally important, after considering the relevant precedent, the Court correctly found, "it would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions]

lacked standing to rely on the Purchase Agreement in pleading its claims." See Findings and Conclusions at 10.

As such, because Customers Bank "has provided no reason for departing from the law of the case doctrine" and reopening the Court's January 25 Decision or the Findings and Conclusions, the Court should deny Customers Bank's motion to amend. See Int'l Union of Bricklayers and Allied Craftworkers, Local 5, 2009 WL 4906525 at *15.

### B. Neither Federal Rules Of Civil Procedure 52 Nor 59 Warrant An Amendment Or Alteration To The Court's Findings And Conclusions.

For the same reasons that this Court should not disturb the law of the case (set forth above in Section A), Customers Bank has not, and cannot, satisfy the standard for relief under either Federal Rules of Civil Procedure 52 or 59. Federal Rule of Civil Procedure 52(b) provides that "[o]n a party's motion . . . the court may amend its findings – or make additional findings – and may amend the judgment accordingly." Rule 59(a)(2) provides, "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." It is well settled that "[t]he purpose of a motion under Rule 52(b) or 59(e) is to correct manifest errors of law or fact or present newly discovered evidence." U.S. v. Mun. Auth. of Union Twp., 181 F.R.D. 290, 293 (M.D. Pa. 1996) (citation omitted). Under Rule 59(e), "[r]elief is only appropriate if one of three situations is shown: '(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice.'" Great Am. Ins. Co. v. Honeywell Int'l Inc., Civil Action No. 05-857, 2009 WL 5064478, *1 (W.D. Pa. Dec. 17, 2009) (citation omitted); see also Talley v. Southeastern Pa. Trans. Auth., No. Civ. 93-3060, 1994 WL 59363, *1 (E.D. Pa. Feb. 25, 1994). Similarly, "[t]he purpose of Rule 52(b) is to allow a court to correct

8

manifest errors of law or fact, or in limited circumstances, to present newly discovered evidence . . . ." Great Am. Ins. Co., 2009 WL 5064478 at *1.

In Delaware County Safe Drinking Water Coalition, Inc. v. McGinty, Civil Action No. 07-1782, 2007 WL 2844590, *1 (E.D. Pa. Sept 25, 2007), the Court explained that "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Id. (denying a motion for reconsideration under Rules 52(b) and 59(a)(2)); see also Great Am. Ins. Co., 2009 WL 5064478 at *1 ("the parties are not free to relitigate issues the court has already decided."). In fact, "[b]ecause federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted *sparingly*." Delaware County Safe Drinking Water Coalition, Inc., 2007 WL 2844590 at *1 (emphasis added, citation omitted); see also Great Am. Ins. Co., 2009 WL 5064478 at *1 ("Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly. . . .") (citation omitted). Further, a "Rule 59(e) motion *may not* be used to raise argument that could have been made prior to entry of judgment." Mun. Auth. of Union Twp., 181 F.R.D. 290 at 293 (emphasis added, citation omitted).

Here, for the reasons outlined in Section A above, the Court should deny Customers Bank's Motion to Amend under Federal Rules of Civil Procedure 52 and 59 because the motion is just reargument masquerading as purported post-trial relief. Moreover, Customers Bank's disagreement with the Court's Findings and Conclusions does not constitute manifest injustice or clear error. Rather, "[a] court will not amend its findings or judgment where a party essentially requests the court to completely rewrite its findings and reverse its judgment." Haberern v. Kaupp Vascular Surgeons Ltd., 151 F.R.D. 49, 51 (E.D. Pa. 1993). Customers Bank "essentially seek[s] to relitigate all of the issues raised previously, and move the Court to rewrite its findings

of fact, discussion, conclusions of law, and reverse its judgment accordingly." Id. (denying a motion to amend under Rule 52(b)).   Like the movant in Southport Teledata, Inc. v. Nova Contact Center Platforms, Inc., "[i]n essence, [Customers Bank] disagrees with the Court's assessment of the witnesses' testimony as well as the Court's interpretation of the contractual agreements in question." Southport Teledata, Inc. v. Nova Contact Center Platforms, Inc., Civil Action No. 05-0030, 2006 WL 3227770, *1 (E.D. Pa. Nov. 6, 2006).   The Court should "not disturb its judgment here merely because, not surprisingly, [Customers Bank] would have weighed the evidence differently." Id.   As such, Customers Bank  has not met the standard for relief under either Rule 52 or 59 and, as a result, the Court should deny the Motion to Amend.

   **C.   The Court Should Not Stay The Entry Of Judgment For $103,976.89 In Favor Of Open Solutions Because It Would Be Unjust For Customers Bank To Retain The Benefit Of Services Already Received Under The 2005 Agreement Without Compensating Open Solutions.**

   Here, the Court should not stay the Judgment entered in favor of Open Solutions for $103,976.89  because (i) since July 2010, when Customers acquired substantially all the assets of USA Bank, Open Solutions has provided data processing services to Customers Bank under the 2005 Agreement (see Findings and Conclusions at 19), (ii) Customers Bank previously paid Open Solutions for services rendered under the 2005 Agreement, (iii) Open Solutions has already provided to Customers Bank the services represented by the Judgment and (iv) Customers Bank has retained the benefit of the services without compensating Open Solutions.  The Court found that "Customers has not shown that these invoices had been paid, that OSI [Open Solutions] had not rendered the services for which the invoices [were] issued, or that the 2005 Agreement did not require payment for such services." See Findings and Conclusions at 19.  Equally true, the justification provided here for allowing Open Solutions to enforce its money judgment against Customers Bank has nothing to do with whether, as the Court determined, Customers Bank

assumed the 2005 Agreement. As a result, the entry of stay would be unjust and inequitable to Open Solutions.

### D. The Court Should Not Stay Its Award of Declaratory Relief In Favor of Open Solutions

Federal Rule of Civil Procedure 62(d) does not provide for a stay as of right with respect to non-monetary judgments such as the award of declaratory relief that the Court entered in favor of Open Solutions. See e.g. Barnhill v. Pregent, Civil Action No. 09-0273, 2010 WL 1791170, *2 (M.D. Pa. May 3, 2010) (Rule 62(d) inapplicable to appeal of remand order because order is not "monetary judgment"); Fallowfield Devel. Corp. v. Strunk, Civil Action Nos. 89-8644, 90-4431, 1995 WL 93438, *2 (E.D. Pa. 1995) (denying stay pending appeal of declaratory judgment because of speculative nature of cost of future injury); NLRB v. Westphal, 859 F.2d 818, 819 (9th Cir. 1988) (Rule 62(d) inapplicable to subpoena compliance order because "it would be difficult to calculate the size of a bond necessary to compensate . . . ."); Donovan v. Fall River Foundry Co., Inc., 696 F.2d 524, 526 (7th Cir. 1982) (automatic stay under Rule 62(d) should be limited to "cases where the judgment being appealed from was a 'money judgment.'").

Rather, the Court should not stay the declaratory relief awarded to Open Solutions unless Customers Bank can satisfy each of the following four considerations:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); see also U.S. v. Nicolet, Inc., Civ. Action No. 85-3060, 1988 WL 21965, *1 (E.D. Pa. Mar. 2, 1988). Moreover, "the burden of establishing whether these four factors have been met lies with the party seeking the stay." Nicolet, Inc., 1988 WL 21965 at *1; see also In re Countrywide Home

Loans, Inc., 387 B.R. 467, 471 (Bankr. W.D. Pa. 2008) (party seeking stay pending appeal "bears the burden of proof on these factors by a preponderance of the evidence."). As demonstrated below, these factors weigh against a stay of the declaratory relief awarded by the Court to Open Solutions.

> i. **Customers Bank Has Not Established A *Strong* Showing That It Is Likely To Succeed On The Merits.**

Here, Customers Bank has not made a showing, strong or otherwise, that it is likely to succeed on the merits of an appeal. Instead, as outlined in Section A above, Customers Bank has not identified _any_ binding authority or appellate level case that support its position that Open Solutions did not have standing to pursue its counterclaims before this Court. See Motion to Amend at 6. Customers Bank simply relies on a sampling of district court cases that, in its earlier rulings in these proceedings, this Court did not find persuasive. Equally significant, neither the fact that the issue of Open Solutions' standing to pursue its counterclaims may be one of first impression for the Third Circuit nor that Customers Bank's appeal may not be frivolous warrants the entry of stay. See Gusdonovich v. Business Information Co., 119 F.R.D. 15, 17 (W.D. Pa. 1987); Nicolet, Inc., 1988 WL 21965 at *2. As such, this Court should find that Customers Bank "has not raised a serious or substantial doubt as to the merits" of the Court's Findings and Conclusions and "[u]nder these circumstances, the Defendant has not demonstrated a likelihood of success on appeal." (In re Howard) Bohm v. Howard, 422 B.R. 593, 603 (Bankr. W.D. Pa. 2010).

> ii. **The Denial Of A Stay Will Not Irreparably Harm Customers Bank.**

Here, in its Motion to Amend, Customers Bank has not articulated that it will suffer any irreparable harm absent a stay. To the contrary, Customers Bank's theory of irreparable harm is that, absent a stay, the Court's Judgment requires Customers Bank to fulfill all its contractual

obligations under the Agreements.   To date, even though Open Solutions has confirmed in writing to Customers Bank that Open Solutions stands ready, willing and able to perform under the Agreements and Customers Bank *continues* to receive the day-to-day benefits of Open Solutions' processing and providing services under the 2005 Agreement, Customers Bank refuses to acknowledge its contractual obligations under the Agreements.   See March 15, 2011 letter from Scott L. Vernick, Esq. to Nicholas Deenis, Esq., a copy of which is attached hereto as Exhibit "A;" March 24, 2011 e-mail from Scott. L. Vernick, Esq. to Nicholas Deenis, Esq., a copy of which is attached hereto as Exhibit "B."   Moreover,  the Court should find that Customers Bank has not articulated any irreparable harm because its Motion to Amend does not include any supporting affidavits that verify Customers Banks' assertions.   See Gusdonovich, 119 F.R.D. at 17 ("defendants have failed to sufficiently show . . . irreparable harm" because the assertions of harm "were not verified in any way").

### iii.   The Granting Of A Stay Will Irreparably Harm Open Solutions.

Since July 2010, when Customers Bank acquired substantially all of the assets of USA Bank, Open Solutions has provided, and continues to provide, data processing services under the 2005 Agreement.  See Findings and Conclusions at 19.  In the past, Customers Bank has failed to pay Open Solutions under the 2005 Agreement (see Findings and Conclusions at 19) and, going forward, will most likely continue not to pay Open Solutions.   As noted above, despite Open Solutions' written request that it do so, Customers Bank refuses to acknowledge its contractual obligations under either the 2005 Agreement or 2008 Agreement.   Customers Bank's conduct leaves Open Solutions with no confidence that Customers Bank will honor the Agreements.   As such, the entry of a stay puts the entire value of both Agreements at risk and leaves Open Solutions unable to address continuing and inevitable further breaches by Customers Bank until an appeal is resolved some time in the future.   Further, the entry of a stay places an additional

burden of *uncertainty* upon Open Solutions because Open Solutions is left not knowing whether the 2005 Agreement requires it to continue processing for Customers Bank (even though Open Solutions continues to do so).   Finally, the remaining value of the 2005 Agreement to Open Solutions is approximately $1.3 million.   See Findings and Conclusions at 19.   The value of the 2008 Agreement to Open Solutions is approximately $1.8 million.   See Declaration of Richard D. Lang, ¶ 2.   Accordingly, the entry of stay will prejudice Open Solutions because it will not have any prompt means to remedy Customers Bank's refusal to fulfill its contractual obligations under the 2005 Agreement and 2008 Agreement.

### iv.   The Public Interest Factor Weighs In Favor Of Open Solutions And Against Customers Bank

Here, the public interest factor weighs in favor of Open Solutions and against Customers Bank.   The public has every interest in seeing private parties, particularly financial institutions like Customers Bank, honor their contractual obligations without court intervention.   Again, the Court determined that "it would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions] lacked standing to rely on the Purchase Agreement in pleading its claims."   See Findings and Conclusions at 10. Further, the Court should not view the FDIC's recent attempt to intervene as furthering a public interest because, if it had attached any value to this dispute (which it knew about even before Customers Bank filed suit against Open Solutions, see February 17, 2011 Transcript of Robert C. Schoppe deposition, 52:23 – 53:11, the relevant portions of which are attached hereto as Exhibit "C"), then the FDIC would have sought to intervene at the beginning of these proceedings instead of waiting until they were over to see if it liked the outcome.   As such, the public interest

factor, along with the other relevant considerations identified above, do not warrant the entry of a stay by the Court.

**IV.**  <u>**CONCLUSION**</u>

For all of the foregoing reasons, Open Solutions respectfully submits that the Motion to Amend should be denied in its entirety.

Respectfully submitted,


/s/ *Scott L. Vernick*

Ronald J. Shaffer, Esquire
Scott L. Vernick, Esquire
Dana S. Katz, Esquire
2000 Market Street, Twentieth Floor
Philadelphia, Pennsylvania 19103
(215) 299-2000
(215) 299-2150 (facsimile)
rshaffer@foxrothschild.com
svernick@foxrothschild.com
dkatz@foxrothschild.com

*Attorneys for Defendant and Counterclaim Plaintiff Open Solutions Inc.*

Dated:  April 1, 2011

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing memorandum in opposition of defendant and counterclaim plaintiff Open Solutions Inc. to the motion to amend findings of fact and conclusions of law and to alter or amend judgment pursuant to Federal Rules of Civil Procedure 52(b), 59(a)(2), and 59(e), and to stay enforcement of the judgment pursuant to Federal Rule of Civil Procedure 62 was served by electronic mail on counsel for the Federal Deposit Insurance Corporation, David Jacoby, Esq. (djacoby@schiffhardin.com) and Judith S. Roth, Esq. (jroth@schiffhardin.com), and was filed electronically and is available for viewing and downloading from the Court's ECF system and that the counsel of record listed below are ECF users and will be served via the Court's ECF system in accordance with Local Civil Rule 5.1.2.

Nicholas Deenis, Esquire
Andrew K. Stutzman, Esquire
William T. Mandia, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000 phone
(215) 564-8120 facsimile
ndeenis@stradley.com
astutzman@stradley.com
wmandia@stradley.com

*Attorneys for Plaintiff and Counterclaim
Defendant, New Century Bank d/b/a
Customers Bank*

Thomas M. Clark, Esquire
Federal Deposit Insurance Corporation
Legal Division, New York Legal Services Office
350 Fifth Avenue, Suite 1200
New York, NY 10118
(917) 320-2855 phone
(917) 320-2917 facsimile
thclark@fdic.gov

*Attorneys for proposed intervenor, Federal
Deposit Insurance Corporation*

/s/    *Dana S. Katz*
Dana S. Katz

Dated:  April 1, 2011