## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
:
**NEW CENTURY BANK d/b/a**                :
**CUSTOMERS BANK**                        :
:
Plaintiff,          :
:          Civil Action No. 2:10-cv-06537-HB
v.                 :
:
**OPEN SOLUTIONS INC.**                   :
:
Defendant.          :
_____:

### ORDER

AND NOW, this _____ day of _____, 2011, upon consideration of the

motion of Federal Deposit Insurance Corporation (the "**FDIC**") to intervene pursuant to Federal

Rule of Civil Procedure 24, and any response thereto, it is hereby:

ORDERED and DECREED as follows:

(1)     The motion is DENIED;

(2)     The FDIC is not entitled to intervene as of right pursuant to Fed. R. Civ. P.

24(a)(2); and

(3)     The FDIC is not permitted to intervene under Fed. R. Civ. P. 24(b).

_____
The Honorable Harvey Bartle, III
United States District Court Chief Judge

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NEW CENTURY BANK d/b/a** : | |
| **CUSTOMERS BANK** : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 2:10-cv-06537-HB |
| v. : | |
| : | |
| **OPEN SOLUTIONS INC.** : | |
| : | |
| Defendant. : | |

**MEMORANDUM OF LAW OF OPEN SOLUTIONS INC.**
**IN OPPOSITION TO FEDERAL DEPOSIT INSURANCE**
**CORPORATION'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24**

Defendant/counterclaim plaintiff, Open Solutions Inc. ("**Open Solutions**"), through its undersigned counsel, Fox Rothschild LLP, hereby submits this memorandum of law in opposition to the motion to intervene pursuant to Federal Rule of Civil Procedure 24 (the "**Motion to Intervene**") filed by the Federal Deposit Insurance Corporation (the "**FDIC**") as receiver for USA Bank:

I.   **INTRODUCTION**

It is axiomatic that a party with an interest in and knowledge of the existence of litigation cannot sit idly by, wait for the outcome of a trial on the merits, and then seek to intervene only after a judgment allegedly adverse to its interests has been entered.  In a transparent and cynical attempt to delay final disposition and appeal of this matter, the FDIC has filed a frivolous motion seeking to intervene in this case after trial and decision on the merits, simply because the FDIC does not like the result.  The FDIC fails to satisfy a single requirement for intervention after trial on the merits.  None of its arguments justify intervention after the case has been marked closed.

The FDIC admits that it was fully aware of the existence of this action, even before the case was ever filed.  The FDIC does not dispute that it, including multiple in-house FDIC attorneys, specifically discussed with New Century Bank d/b/a Customers Bank ("**Customers Bank**") the filing, timing and strategy of the instant action *even before the case was filed* on November 15, 2010.  The FDIC and Customers Bank specifically discussed how long this litigation might take even before it was filed.  See February 17, 2011 Transcript of Robert C. Schoppe deposition, 64:19 – 65:20, the relevant portions of which are attached hereto as Exhibit "A".  The FDIC was aware of the Court's January 25, 2011 Memorandum Opinion (Docket No. 23, the "**January 25 Decision**") regarding the applicability of Section 4.8 of the Purchase and Assumption Agreement to the USA Bank data processing agreements when the FDIC's Robert C. Schoppe submitted an affidavit in support of Customers Bank's motion for reconsideration of the January 25 Decision (Docket No. 28, the "**Motion for Reconsideration**").  See February 7, 2011 Declaration of Robert C. Schoppe, Docket No. 28-1.  Regardless, the FDIC waited until March 22, 2011 to make its Motion to Intervene, after the Court issued its Findings of Fact and Conclusions of Law (Docket No. 53, the "**Findings and Conclusions**").

In fact, the alleged need to "fast-track" discovery and trial of this case, as represented by counsel for Customers Bank, was specifically driven by the FDIC's insistence from before the case was filed that Customers Bank deconvert from the existing USA Bank data processing platform by a date certain.  If accepted, the FDIC's position would permit any dissatisfied bystander to await a decision and then seek to intervene.  No case would ever end and the concept of finality would be abolished.  Although couched in government speak, the FDIC admits that it intentionally waited until after the case was over and an allegedly adverse decision was entered before taking any action. See Motion to Intervene at 14 ("Only when the Court entered judgment on March 7, 2011, however, did this case become a fully matured threat to the

2

FDIC-Receiver's ability to protect its legal rights."). A "fully matured threat" is not the test for intervention.

Moreover, the FDIC's claim that somehow the decision in this case will adversely affect its ability to function as a receiver of failed banks is completely unfounded, intellectually dishonest and possesses a distinctly "Chicken Little" quality. This Court's decision has no impact beyond the parties before the Court. The Court simply held that Customers Bank assumed the 2005 and 2008 Agreements, as provided for in the unambiguous 30 day automatic assumption provision of Section 4.8 of the Purchase and Assumption Agreement between the FDIC and Customers Bank. The FDIC is free to change the 30 day timeframe of Section 4.8 in future purchase and assumption agreements if the FDIC feels more time to make a decision on data processing agreements is needed. The Court has not limited the ability of the FDIC in any way whatsoever to negotiate future purchase and assumption agreements, or amend those already in existence. In addition, the FDIC has the ability to extend the time periods in existing agreements, as it has for Customers Bank. The Court simply looked to the clear and unambiguous language of Section 4.8 of the Purchase and Assumption Agreement at issue and applied it to the data processing agreements in this action.

Finally, intervention is not appropriate because the FDIC does not seek to file any "pleading" setting forth any claim or defense as required by Federal Rules of Civil Procedure 24(c) and 7. The FDIC seeks to file a motion to dismiss for lack of subject matter jurisdiction, not a "pleading" as defined by Federal Rule of Procedure 7(a). The Court's jurisdiction has already been unsuccessfully challenged by Customers Bank. The FDIC's motion to intervene is therefore futile in any event. Accordingly, no extraordinary circumstances exist in this matter, and the Court should deny the Motion to Amend in its entirety.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

On November 15, 2010, Customers Bank filed suit against Open Solutions and asserted purported claims for conversion, replevin and declaratory judgment.  See Complaint, Docket No. 1.   Open Solutions counterclaimed against Customers Bank for breach of contract and declaratory judgment.  See Answer with Affirmative Defenses and Counterclaims, Docket No. 3.[1]  Open Solutions premised its counterclaims for breach of contract and declaratory judgment on Customers Bank's defaults under the Services Agreement entered into by BISYS Information Solutions L.P. ("**BISYS**")[2] and USA Bank[3], effective August 1, 2005 (the "**2005 Agreement**") and the Data Processing Services Agreement entered into by Open Solutions and USA Bank, effective December 31, 2008 (the "**2008 Agreement**") (collectively, the "**Agreements**").  After a trial on the merits on February 24, 2011, among others, the Court found the following facts:

- Customers Bank's correspondence with the FDIC specifically referred to Section 4.8 of the Purchase and Assumption Agreement, which provided a 30 day period within which to reject or assume the 2005 and 2008 Agreements.  See Finding and Conclusions at 17.

- References to Section 4.8 of the Purchase and Assumption Agreement in Customers Bank's correspondence with the FDIC were not simply "mistakes." "[T]hese purported mistakes carried through numerous drafts and FDIC review," and "Customers was not mistaken in its reference to § 4.8."  Id. at 17 and n.5.

- Customers Bank "was _fully aware_ of the 30-day deadline applicable under § 4.8 [of the Purchase and Assumption Agreement] to both the 2005 and 2008

---

[1] Open Solutions also asserted a claim for breach of settlement agreement that was subsequently withdrawn.
[2] In its Findings and Conclusions, the Court found that "Open Solutions is the successor in interest to BISYS."  See Findings and Conclusions at 3.
[3] USA Bank failed on July 9, 2010, and Customers Bank acquired substantially all of its assets by entering into a Purchase and Assumption Agreement with the FDIC.  See Findings and Conclusions at 1.

Agreements.   It [Customers Bank] did not reject *either* the 2005 or 2008 Agreement within that time frame." Id. (emphasis added).

- "[I]t would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions] lacked standing to rely on the Purchase Agreement in pleading its claims." Id. at 10.

The Court also entered judgment that "Customers Bank has assumed and is bound by the contract between USA Bank and Open Solutions Inc.'s predecessor in interest, BYSIS, dated August 31, 2005 and by the contract between USA Bank and defendant Open Solutions Inc. dated December 31, 2008." See Judgment, Docket No. 55 at ¶ 5.

The evidence at trial established that the FDIC has been aware of the dispute between Customers Bank and Open Solutions related to the Agreements and the USA Bank customer data since before the initiation of this action by Customers Bank. See e.g., Exhibit "A", February 17, 2011 Transcript of Robert C. Schoppe deposition, 52:23 – 53:11, 53:24 – 54:14, 64:19 – 65:20; February 24, 2011 Trial Transcript, 44:16-22, 45:17-20 the relevant portions of which are attached hereto as Exhibit "B".  Specifically, Ms. Barbara Stofflet of Customers Bank testified that Customers Bank discussed with the FDIC "moving forward with litigation" related to Open Solutions in October 2010, at least a month prior to the filing of this action. See Exhibit "B", February 24, 2011 Trial Transcript, 44:16-22, 45:17-20.  These discussions between Customers Bank and the FDIC about the potential for litigation with Open Solutions were confirmed by Mr. Robert C. Schoppe, the Assistant Director for the Division of Resolutions and Receiverships for the FDIC.  Mr. Schoppe testified "we [the FDIC] discussed what would happen or we thought

5

might happen if they [Customers Bank] actually went to court with OSI [Open Solutions]."  See Exhibit "A", February 17, 2011 Transcript of Robert C. Schoppe deposition, 54:13-14.

The evidence at trial also confirmed that the FDIC and Customers Bank communicated frequently regarding this dispute and that the FDIC consulted with Customers Bank to draft correspondence purportedly rejecting the 2008 Agreement throughout October and November 2010.  See e.g. Defendant's Trial Exhibits 11, 13, and 15, copies of which are attached hereto as Exhibits "C", "D", and "E" respectively.  Importantly, many of these draft letters that were reviewed by the FDIC include references to the application of Section 4.8 of the Purchase and Assumption Agreement.  See e.g., Exhibit "C", Defendant's Trial Exhibit 11, October 29, 2010 e-mail with attachment of DRAFT letter from B.Stofflet (Customers Bank) to J.Netznik (FDIC); Exhibit "E", Defendant's Trial Exhibit 15, November 3, 2010 e-mail with attachment of revised draft letter from B.Stofflet (Customers Bank) to J.Netznik (FDIC).  Even after the purported rejection of the 2008 Agreement was submitted to the FDIC, the FDIC consulted further with Customers Bank on November 5, 2010, just ten (10) days before Customers Bank filed suit, regarding "the next action steps that need to occur this week in regards to the contract repudiation letter" that Customers Bank sent to the FDIC.  See Defendant's Trial Exhibit 17, a copy of which is attached hereto as Exhibit "F".

In addition, Mr. Schoppe submitted a declaration in support of Customers Bank's motion to dismiss filed on February 8, 2011 that specifically addressed many of the arguments that the FDIC seeks to raise if permitted to intervene.  See February 7, 2011 Declaration of Robert C. Schoppe, Docket No. 28-1 at ¶¶ 5, 7, 8, 11 and 12.  On that basis, there is no doubt that the FDIC has been involved in and aware of this dispute from before the filing of the complaint by Customers Bank.  Much like the FDIC's last minute purported attempt to repudiate the 2005 Agreement on the eve of trial (see Findings and Conclusions at 7, n. 2; Exhibit "B", February 24,

2011 Trial Transcript, 130:8 – 131:21), this Motion to Intervene filed after entry of judgment is too little too late and should be denied in its entirety.

## III.   LEGAL ARGUMENT

### A.   The FDIC's Motion To Intervene Is Not Timely And Should Be Denied.

Despite the fact that the FDIC has been aware of the dispute between Customers Bank and Open Solutions since prior to the filing of Customers Bank's complaint, the FDIC did not attempt to intervene until after both the completion of the trial on the merits and the Court's entry of its Findings and Conclusions and Judgment.   The Third Circuit Court of Appeals has explained that "[a]n application to intervene, whether of right or by permission _must_ be timely under the terms of Rule 24.   The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'"   In re Fine Paper Antitrust Litig., 695 F.2d 494, 500 (3d Cir. 1982) (emphasis added, citation omitted).   Specifically, courts consider "three factors to aid in evaluation of the timeliness issue – '(1) how far the proceedings have gone when the movant seeks to intervene, (2) [the] prejudice which resultant delay might cause to the other parties, and (3) the reason for the delay.'"   Id. (citation omitted); see also Haymond v. Lundy, 205 F.Supp.2d 390, 401 (E.D. Pa. 2002); Astrazeneca AB v. Dr. Reddy's Laboratories, Ltd., Civil A. No. 05-5553 (JAP), 2010 WL 4387519, *3 (D.N.J. Oct. 29, 2010).   However, "a motion to intervene after the entry of a judgment or decree 'should be denied except in extraordinary circumstances.'   The Third Circuit has treated this as a presumption against intervention."   Bank of America Nat'l Trust and Sav. Assoc. v. Hotel Rittenhouse Assoc., Civ. A. No. 83-2809, 1987 WL 11908, *2 (E.D. Pa. May 29, 1987); see also Haymond, 205 F.Supp.2d at 401 ("A motion to intervene after judgment should be denied absent exceptional circumstances."); In re Fine Paper Antitrust Litig., 695 F.2d at 500.

The FDIC has not established _any_ extraordinary or exceptional circumstances to rebut the presumption against intervention at this late stage in these proceedings after the entry of judgment.  See Motion to Intervene at 14-16.  The only reason that the FDIC provides is that the issues affecting FDIC – the interpretation and application of Sections 4.7, 4.8 and 13.5 of the Purchase and Assumption Agreement – were not "mature" until entry of the Findings and Conclusions on March 7, 2011.  The FDIC admits that it deliberately awaited a decision from the Court, rendering the Motion to Intervene untimely, and has provided no other reason for its delay.

Further the issues that allegedly affect the FDIC were raised in Customers Bank's complaint filed November 15, 2011 (see Complaint, Docket No. 1 at 6), discussed in Open Solutions' counterclaims filed November 24, 2011 (see Answer and Counterclaims, Docket No. 3 at 11) and ruled upon by the Court for the first time in the January 25 Decision (see January 25 Decision at 5-7).  In addition, Mr. Schoppe submitted a declaration dated February 7, 2011 in support of Customers Bank's motion to dismiss filed on February 8, 2011 that specifically addressed the application of Sections 4.7, 4.8 and 13.5 and the import, if any, of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("**FIRREA**").  See Declaration of Robert C. Schoppe, Docket No. 28-1 at ¶¶ 5, 7, 8, 11 and 12.  Thereafter, Customers Bank took Mr. Schoppe's deposition on February 17, 2011.  Regardless, the FDIC did not seek to intervene until after the Court entered judgment in favor of Open Solutions.  As such, the Motion to Intervene is untimely because the FDIC has provided no reason for its purposeful delay and has wholly failed to rebut the presumption against intervention.  In re Fine Paper Antitrust Litig., 695 F.2d at 501 (affirming the district court's denial of intervention); Bradburn Parent/Teacher Store, Inc. v. 3M, Civil Action No. 02-7676, 2004 WL 2900810, *4 (E.D. Pa. Dec. 10, 2004) (despite awareness of a pending lawsuit, the motion to intervene was untimely because intervenor

provided no grounds for failing to file the motion and rather, decided to "wait to seek intervention until the Court ruled").

Moreover, allowing the FDIC to intervene after the entry of judgment will result in great prejudice to Open Solutions.  Had the FDIC intervened prior to the trial of these proceedings and entry of judgment by the Court, Open Solutions would have taken additional discovery in the nature of written discovery of the communications between Customers Bank and the FDIC as well as a number of depositions of certain representatives of the FDIC, including Mr. Jeffrey Netznik, whose name appears on significant correspondence between Customers Bank and the FDIC.  Open Solutions likely would have sought to present additional evidence and testimony during trial if the FDIC was a party.  The trial strategy employed by Open Solutions, including the voluntary dismissal with prejudice of one of its counterclaims, may have been different had the FDIC been a party.  If the FDIC is now permitted to intervene, Open Solutions will be significantly prejudiced in the ultimate appeal of this action because it will have been denied important discovery and the opportunity to introduce evidence related to the FDIC and its actions at trial.  See e.g. Astrazeneca AB, 2010 WL 4387519 at *4 (because discovery will be required, the late intervention would be prejudicial to the parties).  Like the movant in Bank of America Nat'l Trust and Sav. Assoc., the FDIC "has failed to demonstrate to this Court any extraordinary circumstances sufficient to overcome the presumption against intervention at this late date", and the Motion to Intervene should be denied in its entirety.  Bank of America Nat'l Trust and Sav. Assoc., 1987 WL 11908 at *2.  In this regard, the FDIC may have the ability to file an amicus brief once the case is on appeal in any event.

**B.  Even If The Court Were To Find The Motion To Intervene Timely, The FDIC Is Not Entitled To Intervene As Of Right Under Rule 24(a)(2).**

The FDIC has failed to establish the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2).  Rule 24(a)(2) provides that a movant may intervene in an action as of right if the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  In the Third Circuit, to intervene as of right, the movant "must establish that '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'"  Porter v. T.D. Bank N.A., Civil Action No. 10-7243, 2011 WL 925734, *1 (E.D. Pa. Mar. 14, 2011) (quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987)).  "Each of these requirements must be met to intervene as of right."  Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005) (citation omitted).  Here, as explained above, the FDIC's Motion to Intervene was not timely as it was filed after the entry of judgment by the Court.  In addition, the FDIC has failed to establish the remaining three requirements for intervention as of right.

**i.  The FDIC Has Not Established A Sufficient Interest In This Litigation Or That The Alleged Interest Will Be Impaired By Disposition Of This Action, And Therefore, The FDIC Is Not Entitled To Intervene.**

The FDIC does not have any interest in this contract dispute surrounding Open Solutions' and Customers Bank's rights and obligations under the Agreements, which the Court found Customers Bank assumed.  Moreover, the FDIC's attenuated potential interests, if any, will not be impaired by disposition.  First, if the FDIC had attached any value to this dispute (which it

knew about even before Customers Bank filed suit against Open Solutions, see Exhibit "A",

February 17, 2011 Transcript of Robert C. Schoppe deposition, 52:23 – 53:11, 53:24 – 54:14,

64:19 – 65:20; Exhibit "B", February 24, 2011 Trial Transcript, 44:16-22, 45:17), then the FDIC

would have sought to intervene at the beginning of these proceedings instead of waiting until

they were over to see if it liked the outcome.

The Third Circuit has explained,

> To establish a sufficient interest for intervention, [the FDIC] must
> demonstrate "an interest relating to the *property or transaction*
> *which is the subject of the action*."   The applicant must
> demonstrate that there is a tangible threat to a legally cognizable
> interest to have the right to intervene. . . *In general, a mere*
> *economic interest in the outcome of litigation is insufficient to*
> *support a motion to intervene*.   Thus, the mere fact that a lawsuit
> may impede a third party's ability to recover in a separate suit
> ordinarily does not give the third party a right to intervene.

Liberty Mut. Ins. Co., 419 F.3d at 220-21 (citations omitted, emphasis added).  With respect to

the third factor, the impairment of the alleged interest, the proposed intervenor must establish

that "a tangible threat to the applicant's legal interest." Id. at 226-27.

To establish the FDIC's alleged sufficient interest in this litigation, the Motion to

Intervene repeats the arguments previously raised by Customers Bank related to the import, if

any, of FIRREA.  The Court previously disposed of these arguments when it found, "[h]olding

Customers liable on the USA Bank contracts [the 2005 and 2008 Agreements] it allegedly

assumed would not conflict with or subvert the claim provisions or jurisdictional limits of

FIRREA." See January 25 Decision at 5.  In its January 25 Decision, the Court correctly stated

that FIRREA "does not purport to address claims against banks that acquire assets from the

FDIC or to limit this court's jurisdiction over such banks.  Further, in cases in which this court

has applied the jurisdictional bar of § 1821, it has done so where the claim was asserted *directly*

*against the FDIC*, not against a party who assumed a failed bank's contracts." See January 25

11

Decision at 10 (emphasis added, citing <u>Samuels v. Acme Market</u>, 845 F.Supp. 292, 293-94 (E.D. Pa. 1994); <u>Decrosta v. Red Carpet Inns Int'l, Inc.</u>, 767 F.Supp 694, 696 (E.D. Pa. 1991)); <u>see also</u> <u>Henrichs v. Valley View Devel.</u>, 474 F.3d 609, 614-15 (9th Cir. 2007) ("because the FDIC was neither a party to the state court lawsuit nor did it retain an interest in the previously-assigned note, FIRREA does not confer exclusive federal jurisdiction over Henrich's claims."). Here, Open Solutions "has not named the FDIC as a party and no reading of its claims suggest that OSI [Open Solutions] seeks payment out of the USA Bank assets under the FDIC's control in its role as receiver." <u>See</u> January 25 Decision at 10.  It is the FDIC that seeks to intervene here, not Open Solutions that seeks to assert claims against the FDIC or the assets of USA Bank's receivership.

In addition, the Court's Findings and Conclusions will not impact the FDIC or its abilities under FIRREA.  The FDIC and Customers Bank entered into the Purchase and Assumption Agreement and agreed to the language of Section 4.8, which provides for the automatic assumption of the 2005 and 2008 Agreements.  If the FDIC finds that this language limits its abilities in any way, it is within the sole power and discretion of the FDIC to alter and/or eliminate the timeframes, language and/or automatic assumption provisions when entering into future purchase and assumption agreements with other acquiring banks or amend agreements already in existence.  However, the FDIC and Customers Bank may not now collude to interpret the Purchase and Assumption Agreement in a certain manner to avoid the obvious failure of Customers Bank to timely reject the Agreements.

After considering all of the evidence, the Court properly determined, among other facts, that Customers Bank is bound by its own correspondence with the FDIC and, as a result, Section 4.8 of the Purchase and Assumption Agreement established the relevant deadline for rejecting the Agreements. Customers Bank failed to reject the Agreements in a timely manner.  Equally

important, after considering the relevant precedent, the Court correctly found, "it would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions] lacked standing to rely on the Purchase Agreement in pleading its claims." See Findings and Conclusions at 10.  This action is wholly unrelated to the FDIC's abilities to repudiate agreements under FIRREA on the broader scale.  Rather, this action centers around the fact that Customers Bank "was *fully aware* of the 30-day deadline applicable under § 4.8 [of the Purchase and Assumption Agreement] to both the 2005 and 2008 Agreements.  It [Customers Bank] did not reject *either* the 2005 or 2008 Agreement within that time frame."  See Findings and Conclusions at 17 (emphasis added).  Further, both of Open Solutions' counterclaims are related to the assumption and/or breach of the Agreements *by Customers Bank*, not any actions or abilities of the FDIC.

Likewise, the FDIC's attempt to override the Court's interpretation of the unambiguous language of the Purchase and Assumption Agreement in Sections 4.7 and 4.8 is simply an invasion of the province of the Court.  The interpretation of an unambiguous contract is an issue of law for the Court to determine.  See e.g. SmartTran, Inc. v. Alpine Confections, Inc., 352 Fed.Appx. 650, 654-55 (3d Cir. 2009).  The FDIC essentially seeks to impose its own interpretation of the clear language of the Purchase and Assumption Agreement, which the Court has now carefully considered at least twice.  The FDIC has not established a sufficient interest in this litigation simply by asserting its disagreement with the Court's findings.  Moreover, all of FDIC's arguments have been previously raised by Customers Bank and as such, have been considered by the Court.

In addition, the FDIC's reliance upon two recent decisions stemming from the Washington Mutual Bank ("**WaMu**") receivership and the acquisition of its assets by JPMorgan

13

Chase Bank, N.A. ("**JPMorgan**") is misplaced.  In both cases, the contracts at issue were leases of real property and were subject to a 90 day option to assume or reject.  See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., Civil Action No. 10-14068, Docket No. 61 at 2 (S.D. Fla. Mar. 18, 2011); Firestone Brookshire HE, LLC v. JPMorgan Chase Bank, N.A., Civil Action No. 10-9155, Docket No. 25 at 2 (C.D. Cal. Mar. 18, 2011).  Further, in both of the WaMu cases, JPMorgan rejected the leases *within the 90 days* provided by the WaMu-JPMorgan purchase and assumption agreement.  Here, Customers Bank "was *fully aware* of the 30-day deadline applicable under § 4.8 [of the Purchase and Assumption Agreement] to both the 2005 and 2008 Agreements.  It [Customers Bank] did not reject either the 2005 or 2008 Agreement within that time frame."  See Findings and Conclusions at 17 (emphasis added).

Therefore, the WaMu cases cited by the FDIC do not apply here, where Customers Bank failed to reject the Agreements within the clear and unambiguous 30 days provided by Section 4.8 and thereby automatically assumed them.  As such, Open Solutions brought its claims for breach of contract of the Agreements and declaratory judgment based on Customers Bank's assumption of the Agreements.  On these facts, the Court correctly found, "it would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions] lacked standing to rely on the Purchase Agreement in pleading its claims."  Id. at 10.

In Firestone Brookshire HE, LLC, the Court distinguished this Court's January 25 Decision because the Firestone case involved a different provision of the purchase and assumption agreements regarding the definition and interpretation of "Bank Premises," not the assumption or rejection of data processing services contracts.  See Firestone Brookshire HE, LLC, Civil Action No. 10-14068, Docket No. 61 at 7, n.6.  In addition, the Courts in Firestone

and in Interface Kanner, LLC, both found that the WaMu – JPMorgan purchase and assumption agreement's "Bank Premises" provision was not clear.  Id. at 7; Interface Kanner, LLC, Civil Action No. 10-14068, Docket No. 61 at 7.  Here, the Purchase and Assumption Agreement is clear and unambiguous.  After considering the services provided for by the Agreements, the evidence at trial, including Customers Bank's own admissions, and the Agreements themselves, the Court correctly found Section 4.8 to be the applicable provision.

Although the cited cases have arisen in different courts, they all involve WaMu leases as interpreted by the WaMu – JPMorgan purchase and assumption agreement and some of the cases may have reached the same result to avoid inconsistent rulings in what is essentially a single case.  However, 290 at 71, LLC v. JPMorgan Chase Bank, N.A. also arose from the same WaMu – JPMorgan purchase and assumption agreement as Interface Kanner, LLC and Firestone Brookshire HE, LLC, yet the Court in 290 at 71, LLC found the opposite.  In 290 at 71, LLC, the Western District of Texas noted that an agreed upon interpretation between the acquiring bank and the FDIC, much like the agreed upon interpretation sought to be imposed by Customers Bank and the FDIC, was an entirely unpersuasive and "convenient interpretation which, the Court notes, has absolutely no grounding in the language of the PAA [Purchase and Assumption Agreement], and is a creature entirely of the parties' own fanciful creation." 290 at 771, LLC v. JP Morgan Chase Bank, 2009 WL 3784347, *7 (W.D. Tex. Nov. 9, 2009).  Essentially, despite the Court's repeated rulings on these issues, the FDIC and Customers Bank seek to impose their agreed upon interpretation of the Purchase and Assumption Agreement that clearly contradicts the plain language of the Purchase and Assumption Agreement.  Allowing them to do so would create a catch-22 and prevent a party like Open Solutions from ever enforcing its rights under the Agreements because the FDIC and Customers Bank could always come up with some creative

interpretation in direct contradiction of the relevant facts and contractual language and claim that the party lacks standing to argue otherwise.

Finally, it is important to note that the Purchase and Assumption Agreement specifically contemplated the possibility that third party claims may be asserted. Section 13.5 entitled "Successors" states, "[e]xcept as otherwise specifically provided in this Agreement . . ." no person shall have any claims under this Purchase and Assumption Agreement. See Purchase and Assumption agreement, Section 13.5. Section 13.5 therefore contemplated that certain rights do in fact flow from the Purchase and Assumption Agreement to third parties. Moreover, Section 12 provides certain indemnification obligations relating to claims brought by parties other than the FDIC and Customers Bank. Id. at Article XII (Indemnification).

Despite all of this collateral argument in the Motion to Intervene rehashing the same arguments previously raised by Customers Bank throughout this litigation, the FDIC has not established an "interest relating to the *property or transaction which is the subject of the action*." Liberty Mut. Ins. Co., 419 F.3d at 220-21 (citations omitted, emphasis added). Rather, the FDIC has set forth a number of attenuated potential interests that do not amount to much. The FDIC's alleged interest is "too indirect to support intervention." Astrazeneca AB, 2010 WL 4387519 at *6 (denying intervention as of right). Similarly, the FDIC has not established how its interests, if any, in this litigation will be impaired by the enforcement of Agreements assumed and breached by Customers Bank. The fact that the FDIC's interest may be "incidentally affected" is not sufficient to establish the required impairment. Liberty Mut. Ins. Co., 419 F.3d at 226-27. "[T]he courts have been clear that a mere economic interest in the outcome of the litigation is, without more, insufficient to support a motion to intervene." Astrazeneca AB, 2010 WL 4387519 at *6 (quoting In re Safeguard Scientifics, 220 F.R.D. 43, 48 (E.D. Pa. 2004)); Liberty

<u>Mut. Ins. Co.</u>, 419 F.3d at 220-21.   Accordingly, the Motion to Intervene should be denied in its entirety.

### ii.  The FDIC's Interests Are Adequately Represented.

Because the FDIC seeks to intervene solely to duplicate the same arguments previously asserted by Customers Bank in its prior motions and at trial, the FDIC has tacitly admitted that its interests are adequately represented.   Therefore, the FDIC is not entitled to intervene as of right.  The Eastern District of Pennsylvania has explained,

> Representation is considered inadequate on any of the following three grounds: (1) that although the applicant's interest are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit.

<u>Rallis v. Trans World Music Corp.</u>, Civil Action No. 96-6100, 1994 WL 52753, *2 (E.D. Pa. Feb. 22, 1994); <u>Bradburn Parent/Teacher Store, Inc.</u>, 2004 WL 2900810 at *5.   The Motion to Intervene has not argued either of the latter two grounds, namely that there is collusion or that Customers Bank is not diligently prosecuting.  <u>See</u> Motion to Intervene at 16-17.   Rather, the FDIC makes broad sweeping conclusions about public policy in an attempt to show that its interests are not represented.   However, throughout the Motion to Intervene and the motion to dismiss filed by the FDIC (Docket No. 61), the FDIC asserts the identical arguments to those raised by Customers Bank time and again throughout this case – specifically, Open Solutions' standing, the application and interpretation of Sections 4.7, 4.8 and 13.5, and the import, if any, of FIRREA, all of which have been considered and ruled upon by the Court in its Findings and Conclusions and January 25 Decision.   As such, the FDIC's interests have been, and continue to be, adequately represented by Customers Bank.   <u>See e.g.</u>, <u>Bradburn Parent/Teacher Store, Inc.</u>,

2004 WL 2900810 at *5 (finding that the proposed intervenor's interests were adequately represented by a party that asserted the same theory).

Finally, as explained above, the FDIC has been aware of this dispute and this action since before the lawsuit's inception, provided deposition testimony and a declaration in these proceedings, and consulted with Customers Bank about the Agreements prior to the filing of this case.  The FDIC had every opportunity to intervene prior to trial if it believed that its interests were not adequately represented by Customers Bank.  The FDIC's calculated decision to sit on the side lines and allow Customers Bank to prosecute this case establishes that the FDIC believed its interests were in fact adequately represented.  It is only now, that Customers Bank has a judgment entered against it that FDIC seeks to intervene.  Therefore, the FDIC's interests are adequately represented and in fact, appear to be identical to Customers Bank's interests, and as such, the FDIC is not entitled to intervene as of right.

### C. Even If The Court Were To Find The Motion To Intervene Timely, The FDIC Has Not Satisfied The Standard For Permissive Intervention.

The FDIC has failed to establish the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b).  Rule 24(b) provides

> (1) In General.
>     On timely motion, the court may permit anyone to intervene who:
>     (A) is given a conditional right to intervene by a federal statute; or
>     (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> (2) By a Government Officer or Agency.
>     On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
>     (A) a statute or executive order administered by the officer or agency; or
>     (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) Delay or Prejudice.
In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

See Fed. R. Civ. P. 24.  "Under Rule 24(b)(2), permissive intervention may be granted upon timely application of the movant if the movant can demonstrate that intervention would not result in prejudice or undue delay in the adjudication of the rights of the original parties.  See Fed. R. Civ. P. 24(b)(2).  Whether or not to grant permissive intervention lies in the sound discretion of the district court."  Bradburn Parent/Teacher Store, Inc., 2004 WL 2900810 at *5.

As explained in detail above, the FDIC's Motion to Intervene is not timely, and as such should be denied in its entirety.  In addition, the FDIC seeks to rehash the same arguments raised by Customers Bank and decided by the Court, all of which are law of the case and the subject of Customers Bank's pending Motion to Amend.  Allowing the FDIC to intervene after the entry of judgment will result in great prejudice to Open Solutions and undue delay.  Had the FDIC intervened prior to the trial of these proceedings and entry of judgment by the Court, Open Solutions would have taken additional discovery.  Open Solutions may have pursued a different trial strategy, including not voluntarily dismissing one of its counterclaims with prejudice and presenting additional evidence and testimony during trial.  If the FDIC is now permitted to intervene, Open Solutions will be prejudiced in the ultimate appeal of this action because it will have been denied important discovery and the opportunity to introduce evidence related to the FDIC and its actions at trial.  On that basis, the proposed intervention will "result in undue delay in the adjudication of the rights of the original parties."  Id. at *5.  In this regard, Open Solutions has continued to process the accounts and data of former USA Bank customers throughout this action despite not receiving payment for services rendered.  Allowing intervention and further delay will only magnify the prejudice and harm that Open Solutions continues to suffer.

Moreover, the FDIC's alleged defenses based on FIRREA, Sections 4.7, 4.8 and 13.5 and Open Solutions' standing have all been carefully considered and ruled upon by the Court.  As detailed in Open Solutions' opposition to Customers Bank's Motion to Amend (Docket No. 62), these issues constitute law of the case, and the even if permitted to intervene, FDIC may not now relitigate these points.  "The law of the case doctrine is similar to the doctrine of *res judicata* or, alternative, claim and issue preclusion, in that it limits relitigation of an issue once it has been decided by the Court."  Bosley v. The Chubb Inst., 516 F.Supp.2d 479, 484 (E.D. Pa. 2007); see also Int'l Poultry Processors, Inc. v. Wampler Foods, Inc., No. Civ. A. 98-CV-4612, 1999 WL 213369, *1 (E.D. Pa. Apr. 8, 1999), *aff'd*, 215 F.3d 13141 (3d. Cir. 2000) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.").

"[G]iven the late stage of these proceedings . . . the Court [should] find[] that permitting [the FDIC] to intervene in this matter will unduly delay and prejudice the adjudication of" Open Solutions' and Customers Bank's rights.  Astrazenenca AB, 2010 WL 4387519 at *7.  As such the Court should not permit the FDIC to intervene in this case.  Id.

### D.  The FDIC Failed To File A Pleading As Required By Rule 24 And The Motion To Intervene Should Be Denied.

Intervention is not appropriate because the FDIC does not seek to file any "pleading" setting forth any claim or defense as required by Federal Rules of Civil Procedure 24(c) and 7.  The FDIC seeks to file a motion to dismiss for lack of subject matter jurisdiction, not a "pleading" as defined by Federal Rule of Procedure 7(a).  The Court's jurisdiction has already been unsuccessfully challenged by Customers Bank multiple times, and the Court has ruled on these issues, which now constitute law of the case.  On that basis, the FDIC's Motion to Intervene is therefore futile in any event.  "The requirements of Rule 24(c) are not, however,

mere suggestions," and the FDIC has failed to meet these requirements, another basis for denying the FDIC's Motion to Intervene.  <u>Porter</u>, 2011 WL 925734 at *2 (the motion to intervene "is not accompanied by an such pleading, nor does the motion itself set forth with any specificity the nature of the claims or defenses that he wishes to assert or against whom he would assert them.").[4]

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Open Solutions respectfully submits that the Motion to Intervene should be denied in its entirety.

Respectfully submitted,

/s/ *Ronald J. Shaffer*
Ronald J. Shaffer, Esquire
Scott L. Vernick, Esquire
Dana S. Katz, Esquire
2000 Market Street, Twentieth Floor
Philadelphia, Pennsylvania 19103
(215) 299-2000
(215) 299-2150 (facsimile)
rshaffer@foxrothschild.com
svernick@foxrothschild.com
dkatz@foxrothschild.com

*Attorneys for Defendant and Counterclaim Plaintiff Open Solutions Inc.*

Dated:  April 6, 2011

---

[4] Although there are cases that do not strictly enforce the technical requirement of filing a pleading with a motion to intervene imposed by Federal Rule of Civil Procedure 24(c) **in the early stages of litigation**, those cases do not stand for the proposition that the FDIC may disregard the requirement of a pleading now, where judgment has already been entered in this action, and the case is essentially over.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing memorandum in opposition of defendant and counterclaim plaintiff Open Solutions Inc. to the motion to intervene pursuant to Federal Rule of Civil Procedure 24 was served by electronic mail on counsel for the Federal Deposit Insurance Corporation, David Jacoby, Esq. (djacoby@schiffhardin.com) and Judith S. Roth, Esq. (jroth@schiffhardin.com), and was filed electronically and is available for viewing and downloading from the Court's ECF system and that the counsel of record listed below are ECF users and will be served via the Court's ECF system in accordance with Local Civil Rule 5.1.2.

Nicholas Deenis, Esquire
Andrew K. Stutzman, Esquire
William T. Mandia, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000 phone
(215) 564-8120 facsimile
ndeenis@stradley.com
astutzman@stradley.com
wmandia@stradley.com

*Attorneys for Plaintiff and Counterclaim Defendant, New Century Bank d/b/a Customers Bank*

Thomas M. Clark, Esquire
Federal Deposit Insurance Corporation
Legal Division, New York Legal Services Office
350 Fifth Avenue, Suite 1200
New York, NY 10118
(917) 320-2855 phone
(917) 320-2917 facsimile
thclark@fdic.gov

*Attorneys for proposed intervenor, Federal Deposit Insurance Corporation*

/s/    *Dana S. Katz*
Dana S. Katz

Dated:  April 6, 2011