# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                          :
**NEW CENTURY BANK d/b/a**                :
**CUSTOMERS BANK**                        :
                                          :
             Plaintiff,                   :
                                          :   Civil Action No. 2:10-cv-06537-HB
         v.                               :
                                          :
**OPEN SOLUTIONS INC.**                   :
                                          :
             Defendant.                   :
_____ :

## ORDER

AND NOW, this _____ day of _____, 2011, upon consideration of the

motion of Federal Deposit Insurance Corporation (the "**FDIC**") to dismiss for lack of subject

matter jurisdiction and to alter or amend the judgment, and any response thereto, it is hereby:

ORDERED and DECREED as follows:

(1)    The motion is DENIED;

(2)    The Court has subject matter jurisdiction; and

(3)    Open Solutions' counterclaims shall not be dismissed.


                                   _____
                                   The Honorable Harvey Bartle, III
                                   United States District Court Chief Judge

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NEW CENTURY BANK d/b/a** | : | |
| **CUSTOMERS BANK** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:10-cv-06537-HB |
| v. | : | |
| | : | |
| **OPEN SOLUTIONS INC.** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW OF OPEN SOLUTIONS INC. IN**
**OPPOSITION TO THE FDIC'S MOTION TO DISMISS FOR LACK OF**
**SUBJECT MATTER JURISDICTION AND TO ALTER OR AMEND THE JUDGMENT**

Defendant/counterclaim plaintiff, Open Solutions Inc. ("**Open Solutions**"), through its undersigned counsel, Fox Rothschild LLP, hereby submits this memorandum of law in opposition to the motion to dismiss for lack of subject matter jurisdiction and to alter or amend the judgment (the "**Motion to Dismiss**") filed by intervenor, Federal Deposit Insurance Corporation, as receiver for USA Bank (the "**FDIC**"):

I.     <u>**INTRODUCTION**</u>

The FDIC's Motion to Dismiss is premised on the *same* arguments and precedent which this Court has twice rejected – once in its January 25, 2011 Memorandum Opinion (Docket No. 23, the "**January 25 Decision**") and for a second time in its March 7, 2011 Findings of Fact and Conclusions of Law (Docket No. 53, the "**Findings and Conclusions**").  Specifically, as the Court noted in its Order granting the FDIC's motion to intervene after trial and judgment, the FDIC's Motion to Dismiss plows the same ground covered in previous motions filed by plaintiff New Century Bank d/b/a Customers Bank ("**Customers Bank**"), such as Customers Bank's

motion for partial dismissal of Open Solutions' counterclaims (Docket No. 6, the "**Motion to Dismiss**"), motion for reconsideration of the January 25 Decision (Docket No. 28, the "**Motion for Reconsideration**"), reply in support of Motion for Reconsideration (Docket No. 49, the "**Reply**"), and motion to amend findings of fact and conclusions of law and to alter or amend judgment pursuant to federal rules of civil procedure 52(b), 59(a)(2), and 59(e), and to stay enforcement of the judgment pursuant to federal rule of civil procedure 62 (Docket No. 56, the "**Motion to Amend**").  Particularly given its repetitive nature, the FDIC's Motion to Dismiss does not present any extraordinary circumstances that warrant departure from the Court's prior Findings and Conclusions, which are law of the case.[1]

The only new arguments raised by the FDIC based on Section 1821(d) and (j) of FIRREA are unavailing.  Neither of those provisions has any application here, where – as this Court has already determined – the Agreements at issue are no longer subject to the FDIC's authority.   As this Court correctly explained in its March 7, 2010 decision, Customers Bank assumed the Agreements at issue in August 2010, three months *before* the FDIC sought to repudiate only one of the two Agreements, and even the FDIC does not challenge that finding. Needless to say, FIRREA does not empower the FDIC to repudiate a contract to which it is no longer a party.  Accordingly, the Court should deny the Motion to Dismiss in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Customers Bank filed suit against Open Solutions and asserted purported claims for conversion, replevin and declaratory judgment.  See Complaint, Docket No. 1.  Open Solutions counterclaimed against Customers Bank for breach of contract and declaratory judgment.  See

---

[1] To the extent that the Court does not apply the law of the case doctrine, Open Solutions incorporates by reference as if set forth in full herein its previously filed Opposition to Customers Bank's Motion to Dismiss (Docket No. 15), Memorandum in Opposition to Customers Bank's Motion for Reconsideration (Docket No. 48), and Memorandum in Opposition to Customers Bank's Motion to Amend (Docket No. 62).

Answer with Affirmative Defenses and Counterclaims, Docket No. 3.  Open Solutions premised its counterclaims for breach of contract and declaratory judgment on Customers Bank's assumption and breach of contract, or in the alternative, declaratory judgment regarding the Services Agreement entered into by BISYS Information Solutions L.P. ("**BISYS**")[2] and USA Bank[3], effective August 1, 2005 (the "**2005 Agreement**") and the Data Processing Services Agreement entered into by Open Solutions and USA Bank, effective December 31, 2008 (the "**2008 Agreement**") (collectively, the "**Agreements**").  After a trial on the merits on February 24, 2011, among others, the Court found the following facts:

- Customers Bank's correspondence with the FDIC specifically referred to Section 4.8 of the Purchase and Assumption Agreement, which provided a 30 day period within which to reject or assume the 2005 and 2008 Agreements.  See Findings and Conclusions at 17.

- References to Section 4.8 of the Purchase and Assumption Agreement in Customers Bank's correspondence with the FDIC were not simply "mistakes." "[T]hese purported mistakes carried through numerous drafts and FDIC review," and "Customers was not mistaken in its reference to § 4.8."  Id. at 17 and n.5.

- Customers Bank "was _fully aware_ of the 30-day deadline applicable under § 4.8 [of the Purchase and Assumption Agreement] to both the 2005 and 2008 Agreements.  It [Customers Bank] did not reject _either_ the 2005 or 2008 Agreement within that time frame."  Id. (emphasis added).  Moreover, its failure

---

[2] In its Findings and Conclusions, the Court found that "Open Solutions is the successor in interest to BISYS."  See Findings and Conclusions at 3.

[3] USA Bank failed on July 9, 2010, and Customers Bank acquired substantially all of its assets by entering into a Purchase and Assumption Agreement with the FDIC.  See Findings and Conclusions at 1.

to reject these agreements "amounted to an assumption of those agreements," as of the expiration of the 30-day period on August 8, 2010. Id. at 18.

- "[I]t would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions] lacked standing to rely on the Purchase Agreement in pleading its claims." Id. at 10.

The Court also entered judgment that "Customers Bank has assumed and is bound by the contract between USA Bank and Open Solutions Inc.'s predecessor in interest, BYSIS, dated August 31, 2005 and by the contract between USA Bank and defendant Open Solutions Inc. dated December 31, 2008." See Judgment at ¶ 5.

The evidence at trial established that the FDIC has been aware of the dispute between Customers Bank and Open Solutions related to the Agreements and the USA Bank customer data since before the initiation of this action by Customers Bank. See e.g., Exhibit "A", February 17, 2011 Transcript of Robert C. Schoppe deposition, 52:23 – 53:11, 53:24 – 54:14, 64:19 – 65:20; February 24, 2011 Trial Transcript, 44:16-22, 45:17-20, the relevant portions of which are attached hereto as Exhibit "B". Specifically, Ms. Barbara Stofflet of Customers Bank testified that Customers Bank discussed with the FDIC "moving forward with litigation" related to Open Solutions in October 2010, at least a month prior to Customers' filing of its complaint. See Exhibit "B", February 24, 2011 Trial Transcript, 44:16-22, 45:17-20. These discussions between Customers Bank and the FDIC about the potential for litigation with Open Solutions were confirmed by Mr. Robert C. Schoppe, the Assistant Director for the Division of Resolutions and Receiverships for the FDIC. Mr. Schoppe testified "we [the FDIC] discussed what would

happen or we thought might happen if they [Customers Bank] actually went to court with OSI [Open Solutions]." See Exhibit "A", February 17, 2011 Transcript of Robert C. Schoppe deposition, 54:13-14.

The evidence at trial also confirmed that the FDIC and Customers Bank communicated frequently regarding this dispute and that the FDIC consulted with Customers Bank to draft correspondence purportedly rejecting the 2008 Agreement throughout October and November 2010. See e.g. Defendant's Trial Exhibits 11, 13, and 15, copies of which are attached hereto as Exhibits "C", "D", and "E" respectively. Importantly, many of these draft letters that were reviewed by the FDIC include references to the application of Section 4.8 of the Purchase and Assumption Agreement. See e.g., Exhibit "C", Defendant's Trial Exhibit 11, October 29, 2010 e-mail with attachment of DRAFT letter from B.Stofflet (Customers Bank) to J.Netznik (FDIC); Exhibit "E", Defendant's Trial Exhibit 15, November 3, 2010 e-mail with attachment of revised draft letter from B.Stofflet (Customers Bank) to J.Netznik (FDIC). Even after the attempted rejection of the 2008 Agreement was submitted to the FDIC, the FDIC consulted further with Customers Bank on November 5, 2010, just ten (10) days before Customers Bank filed suit, regarding "the next action steps that need to occur this week in regards to the contract repudiation letter" that Customers Bank sent to the FDIC. See Defendant's Trial Exhibit 17, a copy of which is attached hereto as Exhibit "F."

Despite knowing of this dispute since before this action was even instituted, the FDIC waited to move to intervene in this action until March 22, 2011 (see Motion to Intervene, Docket No. 60), approximately two weeks after the Court's entry of its Findings and Conclusions and Judgment. On May 2, 2011 the Court granted the FDIC's motion to intervene. See May 2, 2011 Memorandum Opinion (Docket No. 72).

Open Solutions did not initiate this action that the FDIC belatedly now seeks to dismiss. As the testimony and evidence established at trial, the FDIC has been an active behind the scenes participant in this case from before its inception.  The FDIC has had every opportunity to, and in fact has, worked closely with Customers Bank throughout this litigation.   Open Solutions' counterclaims, and this Court's decision, have no impact whatsoever on the FDIC's ability to function in its role as a receiver.  This Court's findings simply apply the clear and unambiguous terms of the Purchase and Assumption Agreement that provide for the automatic assumption of the services agreements by an acquiring bank to the Agreements, which are data processing services agreements.  The FDIC's long delayed intervention, and this Motion to Dismiss, is a classic attempt to get a "second bite at the apple."  Unfortunately, in light of the FDIC's active participation throughout this case to date, this motion is more like a sixth or seventh bite of the leftover core of the apple.

## III.   STANDARD OF REVIEW

The Court's previous opinions reflect a careful consideration and decision on each of the issues raised in the Motion to Dismiss: Open Solutions' standing to pursue its counterclaims against Customers Bank; the import, if any, of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("**FIRREA**") for Open Solutions' counterclaims; and the interpretation and application of Sections 4.7, 4.8 and 13.5 of the Purchase and Assumption Agreement.  Both the law of the case doctrine and Federal Rule of Civil Procedure 59(e) preclude reopening and relitigating these issues.

"The law of the case doctrine is similar to the doctrine of *res judicata* or, alternatively, claim and issue preclusion, in that it limits relitigation of an issue once it has been decided by the Court."  Bosley v. The Chubb Inst., 516 F.Supp.2d 479, 484 (E.D. Pa. 2007); see also Int'l

Poultry Processors, Inc. v. Wampler Foods, Inc., No. Civ. A. 98-CV-4612, 1999 WL 213369, *1 (E.D. Pa. Apr. 8, 1999), *aff'd*, 215 F.3d 13141 (3d. Cir. 2000) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation."). The law of the case doctrine "'prevents courts from entertaining endless appeals on the same issue, [and] the doctrine promotes finality and judicial economy.'"  Bosley, 516 F.Supp.2d at 484 (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc. 123 F.3d 111, 116 (3d Cir. 1997)).   Here, the Court should not reconsider issues that it previously decided, particularly given that the Court already analyzed most of these issues for a second time when the Court issued its Findings and Conclusions and denied Customers Bank's Motion for Reconsideration.

Moreover, while the Third Circuit does recognize certain "extraordinary circumstances" that constitute exceptions to the law of the case doctrine, none of those circumstances apply here. See Bosley, 516 F.Supp.2d at 484 (quoting Pub. Interest Research Group of N.J., Inc.).  "Those circumstances include  . . . '(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.'"  Bosley, 516 F.Supp.2d at 484; see also Int'l Poultry Processors, Inc., 1999 WL 213369 at *2 (citation omitted).  "Courts should 'be loathe to [reverse prior rulings] in the absence of extraordinary circumstances. . . .'"  Int'l Union of Bricklayers and Allied Craftworkers, Local 5 v. Banta Tile & Marble, Civil Action No. 07-1245, 2009 WL 4906525, *14 (M.D. Pa. Dec. 15, 2009).

For the same reasons that this Court should not disturb the law of the case, the FDIC has not, and cannot, satisfy the similar standard for relief under Federal Rules of Civil Procedure 59(e).  It is well settled that "[t]he purpose of a motion under Rule . . . 59(e) is to correct

manifest errors of law or fact or present newly discovered evidence." U.S. v. Mun. Auth. of Union Twp., 181 F.R.D. 290, 293 (M.D. Pa. 1996) (citation omitted).  Under Rule 59(e), "[r]elief is only appropriate if one of three situations is shown: '(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice.'"  Great Am. Ins. Co. v. Honeywell Int'l Inc., Civil Action No. 05-857, 2009 WL 5064478, *1 (W.D. Pa. Dec. 17, 2009) (citation omitted); see also Talley v. Southeastern Pa. Trans. Auth., No. Civ. 93-3060, 1994 WL 59363, *1 (E.D. Pa. Feb. 25, 1994).  Further, a "Rule 59(e) motion *may not* be used to raise argument that could have been made prior to entry of judgment."  Mun. Auth. of Union Twp., 181 F.R.D. 290 at 293 (emphasis added, citation omitted).

As set forth in further detail in Open Solutions' Memorandum of Law in Opposition to the Motion of Customers Bank to Amend Findings of Fact and Conclusions of Law and to Alter or Amend Judgment, and to Stay Enforcement of Judgment (Docket No. 62, the "**Opposition**"), which is incorporated as if set forth in full herein, neither the FDIC nor Customers Bank (in its pending Motion to Amend) have established entitlement to an amendment of the Court's Findings and Conclusions.

## IV.   LEGAL ARGUMENT

### A. The Court Should Deny the FDIC's Improper Attempt to Reopen Issues Previously Decided Multiple Times.

The Court has already decided each of the issues raised in the Motion to Dismiss – Open Solutions' standing to pursue its counterclaims against Customers Bank, the import, if any, of FIRREA for Open Solutions' counterclaims, and the interpretation and application of Sections 4.7, 4.8 and 13.5 of the Purchase and Assumption Agreement.   There is no justification for reopening and relitigating these issues now.

With respect to Open Solutions' standing to pursue its counterclaims, the Court specifically found that "OSI [Open Solutions] *has standing* to seek damages and a declaration of rights with respect to contracts it alleges it has with Customers."  See January 25 Decision at 5 (emphasis added).  In its Findings and Conclusions, the Court denied Customers Bank's Motion for Reconsideration of the standing issue and confirmed its earlier ruling:

> The Court has also considered the arguments with regard to standing in Customers' motion for reconsideration and finds them unpersuasive. . . Since Customers' failure to provide notice within the time period specified in § 4.8 of the Purchase Agreement amounted to an assumption of those agreements, OSI [Open Solutions] may hold Customers accountable for breach of the assumed 2005 and 2008 Agreements.  Customers' motion for reconsideration will be denied, and judgment will be entered in favor of OSI [Open Solutions] on its declaratory judgment claim.

See Findings and Conclusions at 18-19.

Similarly, the Court previously determined that "Customers' argument that § 4.7 is the applicable provision of the Purchase Agreement is unpersuasive" (see January 25 Decision at 7) and that "Section 4.7 of the Purchase Agreement, we reiterate, does not apply to the USA Bank's 2005 and 2008 Agreements with OSI [Open Solutions]."  See Findings and Conclusions at 17.

Moreover, the Court has also previously ruled that FIRREA "does not purport to address claims against banks that acquire assets from the FDIC or to limit this court's jurisdiction over such banks." See January 25 Decision at 10 (citing Lawson v. FDIC, 3 F.3d 11, 14-15 (1st Cir. 1993).  As the Court explained, "[h]olding Customers liable on the USA Bank contracts [the 2005 and 2008 Agreements] it allegedly assumed would *not* conflict with or subvert the claim provisions or jurisdictional limits of FIRREA."  Id. (emphasis added).

9

None of the exceptions to the law of the case doctrine (or, for that matter, none of the justifications for granting a Rule 59(e) motion) apply in this situation, and as such, the Court should deny the FDIC's Motion to Dismiss.

*First*, in its Motion to Dismiss, the FDIC does not point to any new evidence and simply reiterates arguments that have been raised by Customers Bank repeatedly throughout this litigation and considered by the Court.  See, e.g., Afr. v. City of Phila. (In re Phila. Litigation), 158 F.3d 711, 720 (3d Cir. 1998) (finding that because the new evidence "did not significantly deviate" from the previously presented evidence, it does not "warrant[] a departure from the law of the case doctrine").  As the Court noted in its Memorandum Opinion granting the FDIC's motion to intervene (see Memorandum Opinion, Docket No. 72 at 5), the primary new argument raised by the FDIC in the Motion to Dismiss is the import, if any, of the anti-injunction provision of FIRREA, 12 U.S.C. § 1821(j).  That precise argument is addressed more fully below, and in any event does not turn on any evidence that the Court has not previously considered.

*Second*, in its Motion to Dismiss, the FDIC does not point to any supervening *change* in the law.  The FDIC's reliance upon two recent decisions stemming from the Washington Mutual Bank ("**WaMu**") receivership and the acquisition of its assets by JPMorgan Chase Bank, N.A. ("**JPMorgan**") is misplaced.  Neither of these cases identifies a supervening change in Third Circuit law, and thus neither provides sufficient grounds for reconsideration under law of the case principles.

In any event, both cases are distinguishable and inapplicable because both involved leases of real property and were subject to a 90-day option to assume or reject.  See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., Civil Action No. 10-14068, Docket No. 61 at 2 (S.D. Fla. Mar. 18, 2011); Firestone Brookshire HE, LLC v. JPMorgan Chase Bank, N.A., Civil

Action No. 10-9155, Docket No. 25 at 2 (C.D. Cal. Mar. 18, 2011).  Further, in both of the WaMu cases, JPMorgan rejected the leases *within the 90 days* provided by the WaMu-JPMorgan purchase and assumption agreement.  Here, Customers Bank "was *fully aware* of the 30-day deadline applicable under § 4.8 [of the Purchase and Assumption Agreement] to both the 2005 and 2008 Agreements.  It [Customers Bank] *did not reject either the 2005 or 2008 Agreement within that time frame*."  See Findings and Conclusions at 17 (emphasis added).  That failure by Customers Bank directly resulted in the automatic assumption of the Agreements as clearly and unambiguously provided in the Purchase and Assumption Agreement.  Open Solutions' claims are not dependent upon acts or omissions by the FDIC, and rather, stem from Customers Bank's conduct.

Notably, both of these cases acknowledge that other District Courts – including both this Court and the Western District of Texas – have taken a different view of the standing question. See Interface Kanner, LLC, Civil Action No. 10-14068, Docket No. 61 at 10-11; Firestone Brookshire HE, LLC, Civil Action No. 10-14068, Docket No. 61 at 7.  This Court did not err in its January 25 Decision and Findings and Conclusions decisions, but the divergence of views across the district courts confirms that, at a minimum, there was certainly no "clear error" for the purposes of the law of the case doctrine or Federal Rule of Civil Procedure 59(e).

In addition, in Firestone Brookshire HE, LLC, the Court distinguished this Court's January 25 Decision because the Firestone case involved a different provision of the purchase and assumption agreements regarding the definition and interpretation of "Bank Premises," not the assumption or rejection of data processing services contracts.  See Firestone Brookshire HE, LLC, Civil Action No. 10-14068, Docket No. 61 at 7, n.6.  In addition, the Courts in Firestone and in Interface Kanner, LLC, both found that the WaMu – JPMorgan purchase and assumption

agreement's "Bank Premises" provision was not clear.  Id. at 7; Interface Kanner, LLC, Civil Action No. 10-14068, Docket No. 61 at 7.  Here, the Purchase and Assumption Agreement is clear and unambiguous.

Although the cited cases have arisen in different courts, they all involve WaMu leases as interpreted by the WaMu – JPMorgan purchase and assumption agreement and some of the cases may have reached the same result to avoid inconsistent rulings in what is essentially a single case.  However, 290 at 71, LLC v. JPMorgan Chase Bank, N.A. also arose from the same WaMu – JPMorgan purchase and assumption agreement as Interface Kanner, LLC and Firestone Brookshire HE, LLC, yet the Court in 290 at 71, LLC found the opposite.  In 290 at 71, LLC, the Western District of Texas noted that an agreed upon interpretation between the acquiring bank and the FDIC, much like the agreed upon interpretation sought to be imposed by Customers Bank and the FDIC, was an entirely unpersuasive and "convenient interpretation which, the Court notes, has absolutely no grounding in the language of the PAA [Purchase and Assumption Agreement], and is a creature entirely of the parties' own fanciful creation." 290 at 771, LLC v. JP Morgan Chase Bank, 2009 WL 3784347, *7 (W.D. Tex. Nov. 9, 2009).  Essentially, despite the Court's repeated rulings on these issues, the FDIC simply seeks to impose its convenient interpretation of the Purchase and Assumption Agreement that clearly contradicts the plain language of the Purchase and Assumption Agreement in order to avoid potential indemnification to Customers Bank.  Allowing them to do so would create a catch-22 and prevent a party like Open Solutions from ever enforcing its rights under the Agreements because the FDIC could always come up with some novel interpretation in direct contradiction of the relevant facts and contractual language and claim that the party lacks standing to argue otherwise.  The FDIC's arguments are particularly unpersuasive, where as here, the FDIC admits that it is attempting to

avoid its own contractual indemnity liability under the Purchase and Assumption Agreement to Customers Bank.  The Court should not permit Customers Bank and the FDIC to conveniently come up with an interpretation of the Purchase and Assumption Agreement contrary to its clear, unambiguous, and express terms to shift liability to Open Solutions.

Likewise, the FDIC's attempt to override the Court's interpretation of the unambiguous language of the Purchase and Assumption Agreement in Sections 4.7 and 4.8 is simply an invasion of the province of the Court.  The interpretation of an unambiguous contract is an issue of law for the Court to determine.  See e.g. SmartTran, Inc. v. Alpine Confections, Inc., 352 Fed.Appx. 650, 654-55 (3d Cir. 2009).  The FDIC essentially seeks to impose its own creative interpretation of the Purchase and Assumption Agreement, which the Court has now carefully considered at least twice.

*Third*, the Motion to Dismiss does not establish a clear error or manifest injustice.  See *United States v. Daniels*, 209 Fed. Appx. 191 (3d Cir. 2006) ("[t]he law of the case doctrine is not a barrier to correction of judicial error. The threshold for finding clear error and manifest injustice, however, is high").  There is simply no reason to reconsider this Court's sound legal conclusions concerning Open Solutions' standing, the proper interpretation of the 2005 and 2008 Agreements, or FIRREA's non-applicability to "claims against banks that acquire assets from the FDIC."  See January 25 Decision, at 10.

From start to finish, this case has been about the consequences of *Customer Bank's* conduct.  After considering all of the evidence, the Court properly determined, among other facts, that Customers Bank is bound by its own statements and correspondence and, as a result, failed to reject the Agreements in a timely manner.  Customers Bank knew that Section 4.8 applied to the Agreements entered into with Open Solutions.  After considering the relevant

13

precedent, the Court correctly found, "it would be inequitable to find that, having placed itself in privity of contract with OSI [Open Solutions] under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI [Open Solutions] lacked standing to rely on the Purchase Agreement in pleading its claims." See Findings and Conclusions at 10.  This case does not hinge on any conduct of the FDIC.

In any event, the Court's holding that Open Solutions had standing to raise its counterclaims was plainly correct.  It is hornbook law that "a federal court always has jurisdiction to determine its own jurisdiction," even if in exercising that jurisdiction it is "necessary … to address the merits."  United States v. Ruiz, 536 U.S. 622, 628 (2002) (citing United States v. Mine Workers, 330 U.S. 258, 291 (1947)).  Because this Court had "jurisdiction to determine its own jurisdiction," it clearly had the right to interpret the contractual provisions of the Purchase Agreement on which its jurisdiction over Open Solutions' contract claim necessarily turns.  The FDIC's suggestion that the Court was jurisdictionally barred from addressing "legal and factual issues going to the merits," (see Motion to Dismiss at 12) – even though those issues were essential to determining its own jurisdiction in the first place – is simply incorrect. See Ruiz, 536 U.S. at 628.

The FDIC "has provided no reason for departing from the law of the case doctrine" and reopening the Court's January 25 Decision or the Findings and Conclusions. The Court should therefore deny the FDIC's Motion to Dismiss.  See Int'l Union of Bricklayers and Allied Craftworkers, Local 5, 2009 WL 4906525 at *15.

### B. 12 U.S.C. § 1821(j) Does Not Deprive The Court Of Subject Matter Jurisdiction Because Open Solutions' Counterclaims Do Not Restrain Or Affect The FDIC's Exercise Of Powers Or Functions As Receiver.

Courts have noted that "FDIC-R makes much of its broad powers as receiver, but these powers are not without limits" and that "FDIC-R does not enjoy *carte blanche*," and "Courts have ruled numerous times that, despite its '800-pound gorilla'-like statutory powers, the FDIC overstepped its legal authority." Adagio Inv. Holding Ltd. v. FDIC, 338 F.Supp.2d 71, (D.D.C. 2004) (collecting cases, citations omitted). Here, the FDIC is essentially attempting to establish that an acquiring bank cannot be sued for breach of contract and a declaration of its obligations under a contract simply because that contract was *once held* by the FDIC as receiver for a failed bank. That attempt is misguided. The acts or omissions of the acquiring bank after the assumption of a contract from the FDIC as receiver is of no effect on the FDIC or the receivership estate, and FIRREA does not purport to govern the subsequent contract relationships between private parties. See e.g. Lawson v. FDIC, 3 F.3d 11, 14-15 (1st Cir. 1993).

Specifically, Section 1821(j), the anti-injunction provision of FIRREA, does not deprive the Court of jurisdiction to hear this contractual dispute. Section 1821(j) provides, "[e]xcept as otherwise provided in this section, no court may take any action except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or function of the Corporation as a conservator or a receiver." See 12 U.S.C. § 1821(j).

The FDIC incorrectly argues that this Court's decision interferes with its legitimate power to repudiate the contracts of a failed institution, pursuant to Section 1821(e)(1) of FIRREA. See Motion to Dismiss at 4. That claim is at odds with the text of Section 1821(e)(1)(A), however, which makes clear that the FDIC's "[a]uthority to repudiate contracts" extends *only* to contracts or leases "to which [the failed] institution *is* a party" (emphasis added).

15

Here, of course, the Court has already rightly decided that Customers Bank assumed the Agreements in August 2010, when the 30-day period set forth in Section 4.8 of the Purchase and Assumption Agreement expired.  The FDIC's effort to repudiate one of the two Agreements several months later, in November 2010, therefore did not involve any contract "to which [the] institution *is* a party," but rather contracts to which that institution *was once* a party.

The FDIC's purported repudiation of contracts to which the institution is no longer a party therefore clearly exceeded its authority under 1821(e).  The Third Circuit has made clear that 1821(j)'s prohibition on certain types of remedies does *not* bar federal courts from enjoining or interfering with the FDIC when it exceeds its statutory authorities.  See, e.g., Gross v. Bell Sav. Bank PA, 974 F.2d 403, 407 (3d Cir. 1992) ("[F]ederal courts have the ability to restrain the [FDIC] where the Corporation is acting clearly outside its statutory powers.").  Indeed, this conclusion flows directly from the text of Section 1821(j) itself, which only prohibits interference with "the exercise of powers or functions of the Corporation as a conservator or a receiver," a phrase that encompasses only the specific powers and functions granted in Section 1821.

Moreover, here, Open Solutions' counterclaims do not restrain or affect the FDIC's abilities, and the FDIC has no interest in the Agreements, which have been assumed by Customers Bank.  See e.g. Henrichs v. Valley View Devel., 474 F.3d 609, 614 (9th Cir. 2007) ("At the time of the state court litigation, the FDIC had no interest in the note because it had already assigned the note."); Dennis Joslin Co., LLC v. Robinson Broad. Corp., 977 F.Supp. 491, 493 (D.D.C. 1997).

Rather, Open Solutions' counterclaims were asserted directly against Customers Bank and are based only on Customers Bank's conduct, specifically its failures to timely reject the

Agreements and its failures to pay amounts owed under the Agreements. Open Solutions'
counterclaims do not hinge on any conduct of the FDIC. Further, Open Solutions does not allege
breach of contract based on the conduct of the former USA Bank, and Open Solutions has not
brought claims against the FDIC as receiver for USA Bank or sought payment out of the USA
Bank assets under FDIC's control as receiver. Rather, Open Solutions has sought only to
enforce the Agreements against a party thereto and/or to obtain contract damages for breaches of
the Agreements by Customers Bank *after* assumption from the FDIC. Accordingly here, there is
no effect or restraint on the FDIC in its capacity as the receiver for USA Bank.

In Henrichs v. Valley View Devel., the Ninth Circuit Court of Appeals ruled, "Section
1821(j) does not apply because the FDIC was not a party. . . ." Id. at 614; see also Radian Ins.,
Inc. v. Deutsche Bank Nat'l Trust Co., 2009 U.S. Dist. LEXIS 92197 (E.D. Pa. Oct. 1, 2009)
(holding that §1821 only applies to equitable remedies sought *against the FDIC*). Here, the
FDIC is not a party and has no interest in the Agreements at issue. Simply because the FDIC
once held the Agreements as part of the USA Bank receivership estate, "it does not follow that
[the protections of Section 1821(j)] attach for all time to [Agreements] once held by the FDIC."
Dennis Joslin Co., LLC, 977 F.Supp. at 493. Like the Courts found in Henrichs and Dennis
Joslin, the FDIC will not be restrained or affected in any way by the enforcement of the
Agreements between two private parties, and the FDIC has no interest in the Agreements, and as
such, Section 1821(j) does not apply to this action whatsoever. Therefore, the Court is not
deprived of subject matter jurisdiction based on Section 1821(j).

Moreover, the Third Circuit's ruling in Hindes v. FDIC, 137 F.3d 148 (3d Cir. 1998),
does not apply to the circumstances presented here because the FDIC is not a party to these
proceedings and is not affected by these proceedings in any way. In Hindes, the Third Circuit

17

explained, "[o]ur opinion, however, should not be overread . . . We do not suggest that we would reach the same result in a case in which the effect on the FDIC of an order against a third party would be of little consequence to its overall functioning as receiver.  That type of situation is not before us."  Hindes, 137 F.3d at 161.  In its January 25 Decision, the Court was quite correct that FIRREA "does not purport to address claims against banks that acquire assets from the FDIC or to limit this court's jurisdiction over such banks.  Further, in cases in which this court has applied the jurisdictional bar of § 1821, it has done so where the claim was asserted *directly against the FDIC*, not against a party who assumed a failed bank's contracts."  See January 25 Decision at 10 (emphasis added, citing Samuels v. Acme Market, 845 F.Supp. 292, 293-94 (E.D. Pa. 1994); Decrosta v. Red Carpet Inns Int'l, Inc., 767 F.Supp 694, 696 (E.D. Pa. 1991)).  Here, Open Solutions "has not named the FDIC as a party and no reading of its claims suggest that OSI [Open Solutions] seeks payment out of the USA Bank assets under the FDIC's control in its role as receiver."  See January 25 Decision at 10.  For all of these reasons, Section 1821(j) does not apply to Open Solutions' counterclaims asserted against Customers Bank, and the Court is not deprived of subject matter jurisdiction over those claims.

The FDIC also points to Section 1821(d)(13)(D).  That provision deprives courts of jurisdiction over "any action seeking a determination of rights with respect to … the assets *of any depository institution* for which the Corporation has been appointed receiver."  See 12 U.S.C. § 1821(d)(13)(D)(i) (emphasis added).  Here, however, this Court has rightly concluded that as of August 2010, the assets in question – the 2005 and 2008 Agreements – belonged to Customers Bank, not to either USA Bank ("the depository institution for which the Corporation has been appointed receiver") or the FDIC itself.  As a matter of plain text, therefore, Section 1821(d)(13)(D)(i)'s jurisdictional bar does not apply to this case.

18

The same goes for Section 1821(d)(13)(ii), which bars jurisdiction over "any claim relating to any act or omission of such institution or the Corporation as receiver." The FDIC argues that the "act or omission" adversely affected by this case is its repudiation of the Agreements in November 2010. See Motion to Dismiss at 6. But this case does not turn on or affect the FDIC's repudiation of the contract in any way, because, as this Court has correctly held, Customers Bank had *already* assumed the Agreements the previous August. The FDIC lacks the authority to repudiate a contract to which the institution for which it is serving as receiver is no longer a party. See 12 U.S.C. § 1821(e)(1)(A) (granting authority to repudiate only those contracts "to which institution *is* a party" (emphasis added). And of course the FDIC cannot hide behind FIRREA in order to exercise power that exceeds the statutory authorities that FIRREA itself authorizes. See, e.g., Gross, 974 F.2d at 407.

### C. Even If Section 1821(j) Does Apply, It Does Not Bar Open Solutions' Counterclaims.

The Third Circuit Court of Appeals has explained, "Courts have uniformly held that the preclusion of Section 1821(j) does not affect a damages claim." Hindes, 137 F.3d at 161; Romacorp, Inc. v. Prescient, Inc., 2011 WL 1430277, *6 (S.D. Fl. Apr. 14, 2011) (quoting Hindes, finding that "[b]ecause Romacorp seeks damages rather than injunctive relief, section 1821(j) does not bar this Court's jurisdiction"); Sharpe v. FDIC, 126 F.3d 1147, 1155 (9th Cir. 1997) ("The damages claim is not affected by the jurisdictional bar imposed by § 1821(j). . . ."). As such, Open Solutions counterclaim for breaches of the Agreements (see Answer with Counterclaims, Docket No. 3, Count I), which sought damages related thereto is not affected by Section 1821(j).

That leaves Open Solutions' declaratory judgment counterclaim, which sought a declaration that Customers Bank assumed and is fully bound by both the 2005 and 2008

19

Agreements (see Answer with Counterclaims, Count II), and which was granted by the Court (see Judgment, ¶ 5). In addition to the fact that this counterclaim has no effect on the FDIC, is not asserted against the FDIC, and that the FDIC has no interest in the Agreements as explained above, "[t]he bar imposed by § 1821(j) does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as receiver. Section 1821(j) shields only the exercise of powers or functions Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted beyond or contrary to its statutorily prescribed, constitutionally permitted, powers or functions." Sharpe, 126 F.3d at 1155; see also Gross, 974 F.2d at 407 ("federal courts have the ability to restrain the [FDIC] where the Corporation is acting clearly outside its statutory powers"). Here, without citing a basis in FIRREA, the FDIC seeks to interfere in the contractual relationship between private parties after the assumption of the Agreements by Customers Bank, despite the fact that the FDIC no longer has any interest in those Agreements. As the Court previously noted in its January 25 Decision, FIRREA "does not purport to address claims against banks that acquire assets from the FDIC or to limit this court's jurisdiction over such banks." See January 25 Decision at 10 (citing Lawson, 3 F.3d at 14-15). Like the Courts found in Sharpe and Gross, because the FDIC is acting beyond its statutory powers, Open Solutions' "claim[] for declaratory relief . . . therefore [is] not barred by § 1821(j)." Sharpe, 126 F.3d at 1155. As such, the Motion to Dismiss should be denied.

## V.     <u>**CONCLUSION**</u>

For all of the foregoing reasons, Open Solutions respectfully submits that the Motion to Dismiss should be denied in its entirety.

Respectfully submitted,


/s/     *Ronald J. Shaffer*
Ronald J. Shaffer, Esquire
Scott L. Vernick, Esquire
Dana S. Katz, Esquire
2000 Market Street, Twentieth Floor
Philadelphia, Pennsylvania 19103
(215) 299-2000
(215) 299-2150 (facsimile)
rshaffer@foxrothschild.com
svernick@foxrothschild.com
dkatz@foxrothschild.com

*Attorneys for Defendant and Counterclaim Plaintiff Open Solutions Inc.*

Dated:  May 31, 2011

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing memorandum in opposition of defendant and counterclaim plaintiff Open Solutions Inc. to the FDIC's motion to dismiss for lack of subject matter jurisdiction and to alter or amend the judgment was served by electronic mail on counsel for the Federal Deposit Insurance Corporation, David Jacoby, Esq. (djacoby@schiffhardin.com) and Judith S. Roth, Esq. (jroth@schiffhardin.com), and was filed electronically and is available for viewing and downloading from the Court's ECF system and that the counsel of record listed below are ECF users and will be served via the Court's ECF system in accordance with Local Civil Rule 5.1.2.

Nicholas Deenis, Esquire
Andrew K. Stutzman, Esquire
William T. Mandia, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000 phone
(215) 564-8120 facsimile
ndeenis@stradley.com
astutzman@stradley.com
wmandia@stradley.com

*Attorneys for Plaintiff and Counterclaim Defendant, New Century Bank d/b/a Customers Bank*

Thomas M. Clark, Esquire
Federal Deposit Insurance Corporation
Legal Division, New York Legal Services Office
350 Fifth Avenue, Suite 1200
New York, NY 10118
(917) 320-2855 phone
(917) 320-2917 facsimile
thclark@fdic.gov

*Attorneys for proposed intervenor, Federal Deposit Insurance Corporation*

/s/     *Dana S. Katz*
Dana S. Katz

Dated:  May 31, 2011