IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEW CENTURY BANK d/b/a CUSTOMERS BANK,<br><br>                    Plaintiff/Counter-defendant,<br><br>and<br><br>THE FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for USA Bank,<br><br>                    Intervenor/Counter-defendant,<br><br>v.<br><br>OPEN SOLUTIONS, INC.<br><br>                  Defendant/Counter-plaintiff. | CIVIL ACTION NO. 10-cv-06537-HB |

**FDIC-RECEIVER'S NOTICE OF SUBSEQUENT AUTHORITY
IN SUPPORT OF FDIC-RECEIVER'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION AND TO ALTER OR AMEND THE JUDGMENT**

The Federal Deposit Insurance Corporation as Receiver for USA Bank ("FDIC-Receiver") brings to the Court's attention the opinion of the United States District Court for the Northern District of Texas dated July 27, 2011 in the case captioned *Eastbourne Arlington One, LP v. JPMorgan Chase Bank, National Association*, Civil Action No. 4:10-CV-948-Y, Order Granting Motion to Dismiss (Doc. 38) (N.D. Tex. July 27, 2011).

This Order is directly relevant to the FDIC-Receiver's Motion to Dismiss for Lack of Subject Matter Jurisdiction and to Alter or Amend the Judgment (Dkt. No. 61). The motion is pending.

A copy of the Order is attached as Exhibit "A".

-2-

Dated: July 29, 2011

| | |
|---|---|
| David Jacoby<br>Judith S. Roth[*]<br>Schiff Hardin LLP<br>666 Fifth Avenue, 17th Floor<br>New York, New York 10103<br>212 753-5000[*] | Federal Deposit Insurance Corporation<br>Legal Division – New York Legal Services Office<br>350 Fifth Avenue, Suite 1200<br>New York, NY 10118<br>Telephone: (917) 320-2855<br>Facsimile:  (917) 320-2917<br>E-mail address: thclark@fdic.gov<br><br>By: s/ Thomas M. Clark<br>     Thomas M. Clark<br>     [Pa. Attorney ID No. 31170] |

*Attorneys for Intervenor The Federal Deposit Insurance Corporation,*
*as Receiver for USA Bank*

NY\51028576.1

---

[*] Motion for admission *pro hac vice* pending.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EASTBOURNE ARLINGTON ONE, LP | § § | |
| VS. | § § | CIVIL ACTION NO. 4:10-CV-948-Y |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | § § § | |

ORDER GRANTING MOTION TO DISMISS

Before the Court is the Motion to Dismiss (doc. 21) filed by defendant JPMorgan Chase Bank, National Association ("JPMorgan"). By the motion, JPMorgan seeks dismissal of the amended complaint of plaintiff Eastbourne Arlington One, LP ("Eastbourne"), pursuant to Federal Rule of Civil Procedure 12(b)(6). After review, the Court will grant JPMorgan's motion.

I. Background

On October 25, 2007, Washington Mutual Bank ("Washington Mutual") entered into a lease agreement with Eastbourne ("the lease"), under which Eastbourne leased certain real property in Tarrant County, Texas ("the lease property"), to Washington Mutual for use as a future branch office. (Am. Compl. 2-3, ¶ 6 (doc. 16).) Before Washington Mutual ever occupied any facilities on the lease property, however, on September 25, 2008, the Office of Thrift Supervision declared Washington Mutual insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as Washington Mutual's receiver pursuant to the Financial Institutions

Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). (*Id.* at 3, ¶ 7; 6, ¶ 16.)

That same day, the FDIC entered into a Purchase and Assumption Agreement ("PAA") with JPMorgan, by which the FDIC transferred to JPMorgan a substantial number of Washington Mutual's assets and liabilities.[1] (*Id.* at 3, ¶ 8.) The PAA excluded from the transfer all assets that constituted "leased Bank Premises." (*Id.* at 4, ¶ 12.) With respect to "leased Bank Premises," the PAA gave JPMorgan a 90-day option period to assume or reject them. (*Id.*) The PAA defined "Bank Premises" as "banking houses, drive-in banking facilities and teller facilities . . . that are owned or leased by [Washington Mutual] and that are occupied by [Washington Mutual] as of Bank Closing," which was September 25, 2008. (*Id.* at 5, ¶ 13.) In contrast, all assets constituting "Other Real Estate" were automatically transferred to JPMorgan under the PAA. (*Id.* at 5, ¶ 15.)

JPMorgan, taking the position that the lease property constitutes "leased Bank Premises," has refused to pay rent to Eastbourne under the lease. (*Id.* at 7, ¶ 20.) Eastbourne, therefore, filed the instant lawsuit against JPMorgan on December 8, 2010, and later amended its complaint on February 15, 2011. The amended complaint asserts state-law claims against JPMorgan for

---

[1] Eastbourne alleges that JPMorgan had attempted to acquire all of Washington Mutual's assets just five months prior to the FDIC transfer. (Am. Compl. 3, ¶ 9.)

2

breach, abandonment, and repudiation of the lease.[2] (*Id.* at 7-8, ¶¶ 21-23.) JPMorgan now seeks dismissal of Eastbourne's amended complaint under Rule 12(b)(6).

II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "[f]actual allegations must be

---

[2] The Court has diversity jurisdiction over this action. *See* 28 U.S.C.A. § 1332 (West 2011).

enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007) (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 1955. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations omitted) (internal quotation marks omitted). "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, (5th Cir. 2007) (footnote omitted).

III. Discussion

    A. Eastbourne's Requests for Judicial Notice

    As a preliminary matter, Eastbourne asks the Court to take judicial notice of a number of documents, ranging from court

4

records to a Wall Street Journal article. Federal Rule of Evidence 201 authorizes the Court to "take judicial notice of an 'adjudicative fact' if the fact is 'not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.'" *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (quoting Fed. R. Evid. 201(b)).

With regard to the court records, "a court may take judicial notice of a 'document filed in another court to establish the fact of such litigation and related filings,' but [generally] 'cannot take notice of the factual findings of another court.'" *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-1174-G, 2007 WL 1411042, at *1 (N.D. Tex. May 14, 2007) (Fish, C.J.) (quoting *Taylor*, 162 F.3d at 829). This is because a court's findings are almost always subject to reasonable dispute. *See Taylor*, 162 F.3d at 30.

It is unclear for what purpose Eastbourne is offering the court records--that is, whether Eastbourne is offering them to establish the fact of their having been filed or to establish the facts asserted therein. But for the court records to have any relevance to the instant case, Eastbourne must be offering them for their contents. Most of the assertions in the court records, however, are not adjudicative facts (e.g., legal determinations), and those that are adjudicative facts are subject to reasonable dispute. *See Taylor*, 162 F.3d at 830-31. Therefore, the Court

will not take judicial notice of the court records.

Eastbourne asks the Court to take judicial notice of the Wall Street Journal article because it purportedly "documents [JPMorgan's] attempts to purchase Washington Mutual Bank in April/May, 2008." (Pl.'s Req. for Judicial Notice 3 (doc. 17).) But the Court cannot take judicial notice of the article because its contents are subject to reasonable dispute. *See* Fed. R. Evid. 201(b). Moreover, the statements within the article constitute hearsay. *See James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008).

Eastbourne also asks the Court to take judicial notice of an order issued by the United States District Court for the Southern District of Texas. But for the same reasons the Court cannot take judicial notice of the aforementioned court records, it cannot take notice of another court's findings. *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (noting that a district court "generally cannot take notice of the findings of fact from other proceedings because those facts are usually disputed and almost always disputable" (citing *Taylor*, 162 F.3d at 830)). Thus, in light of the foregoing, Eastbourne's requests for judicial notice (docs. 17, 36) are DENIED.

B.  JPMorgan's Motion to Dismiss

Turning to JPMorgan's motion to dismiss, the initial inquiry before the Court is whether Eastbourne has standing to sue JPMorgan under the lease. *See Gale v. Garnrite*, 559 F.3d 359, 362 (5th Cir.

6

2009) (noting that standing is "a threshold matter"). Under Texas law, to establish standing to sue for "damages flowing from the breach of a written agreement, there must ordinarily be a privity existing between the party damaged and the party sought to be held liable for the repudiation of the agreement." *Vara-Portofino Tech Ctr. L.L.C. v. Sandvik*, No. H-09-2376, 2009 WL 4263975, at *4 (S.D. Tex. Nov. 25, 2009) (quoting *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 747 (Tex. App.--Dallas 1990, writ denied) (internal quotation marks omitted)).[3]

In its amended complaint, Eastbourne asserts that both privity of contract and privity of estate exist between itself and JPMorgan. Specifically, Eastbourne contends that the lease property constitutes "Other Real Estate" as defined in the PAA and that, consequently, the lease was automatically transferred to JPMorgan when the PAA was executed. This, according to Eastbourne, created privity of contract and privity of estate between itself and JPMorgan under the lease.[4]

JPMorgan, in its motion to dismiss, contends that Eastbourne is a "stranger" to the PAA and that, as a result, Eastbourne lacks standing to interpret or enforce the PAA's terms. (Def.'s Br. 3.) JPMorgan further contends that, even assuming Eastbourne is

---

[3] Both parties apply Texas law in their briefing, and the Court is content to do so as well--especially considering that Texas is the forum state.

[4] Eastbourne's position is that the lease property was not "Bank Premises" within the meaning of the PAA because JPMorgan did not occupy the lease property on the date the PAA was executed.

7

permitted to offer its interpretation of the PAA, the Court should reject Eastbourne's interpretation as incorrect. According to JPMorgan, it never became a party to the lease because the lease property constitutes "leased Bank Premises," which it could, and did, reject--not "Other Real Estate," which would have automatically been transferred under the PAA. In addition, JPMorgan contends that section 3.3 of the PAA requires the execution of a separate document to effect a transfer of the lease and that no such document was ever executed.[5]

In its response, Eastbourne insists that it should be permitted to offer its interpretation of the PAA to show that JPMorgan assumed the lease from the FDIC.[6] Otherwise, Eastbourne contends, JPMorgan will be free to "'interpret' the PAA contrary to its terms to the detriment of any third party who is affected by it. (Pl.'s Resp. 4.) In addition, as an alternative theory for establishing standing to enforce the PAA, Eastbourne claims that it

---

[5] Section 3.3 states,

> <u>Manner of Conveyance; Limited Warranty; Nonrecourse; Etc.</u> The conveyance of all assets, including real and personal property interests, purhased by the assuming bank under this agreement[,] shall be made, as necessary, by receiver's deed or receiver's bill of sale, "as is[,"] "where is[,"] without recourse[,] and, except as otherwise specifically provided in this agreement, without any warranties whatsoever with respect to such assets, express or implied, with respect to title, enforceability, collectibility, documentation[,] or freedom from liens or encumbrances (in whole or in part), or any other matters.

(Def.'s App. 101.)

[6] Similarly, Eastbourne contends that it has standing to assert the parole-evidence rule to prevent JPMorgan from introducing extrinsic evidence in support of its proposed construction of the PAA's terms.

8

is a third-party beneficiary of the PAA "because the PAA directly affects [it]s rights and interests." (Pl.'s Resp. 18.) JPMorgan replies that section 13.5 of the PAA expressly disclaims the presence of any intention to benefit third parties. *See infra* note 7.

Eastbourne's sole theory for establishing privity with JPMorgan under the lease depends on its interpretation of the PAA, a contract between the FDIC and JPMorgan. Thus, before Eastbourne can establish privity with JPMorgan under the lease, Eastbourne must show either that has privity with JPMorgan through the PAA or that it is a third-party beneficiary of the PAA. *See Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992) ("Under Texas law, only actual parties to a contract or intended third-party beneficiaries can claim the benefit of a contract." (citations omitted)). And because Eastbourne is not a party to the PAA, its only hope is the latter.

In Texas, "[a] contract creates a third-party creditor beneficiary only if the signatories (1) intended to confer a benefit on that third-party and (2) entered the contract to confer that benefit on the third party. The language of the contract must be clear, and the intent of the contracting parties controls." *In re Moose Oil & Gas Co.*, 613 F.3d 521, 527 (5th Cir. 2010) (citing *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). Moroever, "[a] presumption exists that parties contracted for themselves unless it clearly appears that they

9

intended a third party to benefit from the contract." *Id.* (quoting *MCI Telecomm.*, 995 S.W.2d at 651 (internal quotation marks omitted)).

In the PAA, not only is there an absence of language showing that the FDIC and JPMorgan intended to benefit Eastbourne, there is language in the PAA expressly disclaiming any such intention.[7] (Def.'s App. 121.)[8] Consequently, Eastbourne is a stranger to the PAA and cannot enforce its terms. *See Kemp*, 951 F.2d at 662 (declining to allow property purchasers to claim the benefit of a subordination agreement between two lienholders because the purchasers were neither parties nor intended beneficiaries of the agreement). As a result, Eastbourne, in turn, cannot establish

---

[7] Section 13.5 of the PAA reads as follows:

All terms and conditions of this Agreement shall be binding on the successors and assigns of the Receiver, the Corporation[,] and the Assuming Bank. Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation[,] and the Assuming Bank any legal or equitable right, remedy[,] or claim under or with respect to this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation[,] and the Assuming Bank and **for the benefit of no other person.**

(Def.'s App. 121 (emphasis added).)

[8] Eastbourne contends that it is a creditor beneficiary pursuant to this clause in section 13.5: "[e]xcept as otherwise specifically provided in this Agreement." (Def.'s App. 121.) According to Eastbourne, section 2.1 indicates that JPMorgan intended to perform the obligations reflected in Washington Mutual's books. Eastbourne relies on the language in section 2.1 stating that JPMorgan "agrees to pay, perform, and discharge" Washington Mutual's liabilities, "which are reflected on the Books and Records of [Washington Mutual] as of [Bank Closing]." (Def.'s App. 99.) This language, however, does not reflect an intention to directly benefit Eastbourne. To the extent that Eastbourne benefits from this language, it does so as an incidental beneficiary. *See In re Moose*, 613 F.3d at 527 ("That a contract incidentally benefits some third party is insufficient to establish an intent to create a third-party beneficiary.").

privity with JPMorgan, which means it cannot recover from JPMorgan on the lease.[9]

This result is consistent with the Court's decision in *Old Stone Bank v. Fidelity Bank*, 749 F. Supp. 147 (N.D. Tex. 1990). In *Old Stone*, the owner of a building in Fort Worth, Texas, entered into a commercial lease with an entity called B.M.K. Resources, Inc. ("BMK"). *Old Stone*, 749 F. Supp. at 148. BMK subsequently assigned its interest as lessee to Fidelity National Bank of Fort Worth ("Old Fidelity"), and the building owner assigned its right to recover rent payments to Old Stone Bank ("Old Stone"). *Id.* at 148-49. Old Fidelity eventually became insolvent, and the FDIC was appointed as Old Fidelity's receiver. *Id.* at 149. The FDIC then entered into a purchase and assumption agreement with Fidelity Bank ("New Fidelity"), by which it transferred a number of Old

---

[9] The Court acknowledges that this result potentially creates a "catch-22" for plaintiffs in "failed-bank" cases like the instant one. That is, a lessor in such a case has virtually no way of proving that the FDIC transferred the lease to a solvent bank, like JPMorgan, because the lessor cannot use the PAA as proof of the alleged assignment. But this catch-22 is simply a byproduct of FIRREA. For example, had Washington Mutual remained solvent and later assigned the lease to JPMorgan, Eastbourne could have sued both Washington Mutual and JPMorgan on the lease were either to challenge the assignment--because one of them would have been liable on the lease.
  Here, because of FIRREA, this option is not available to Eastbourne, because the FDIC is allowed a "reasonable time" within which it "may disaffirm or repudiate" the lease if it "determines [the lease] to be burdensome" and "determines [that disaffirmance or repudiation] will promote the orderly administration of [Washington Mutual]'s affairs." 12 U.S.C.A. § 1821(e)(1), (2) (West 2011). And while FIRREA allows for Eastbourne to recover damages for such a dissaffirmance or repudiation, those damages are quite limited. *See id.* § 1821(e)(3), (4). But it is important to note that Congress created this catch-22, not JPMorgan.
  To say that a catch-22 exists in this case, of course, assumes that JPMorgan did, in fact, acquire the lease. In the event that JPMorgan did not actually acquire the lease, there would be no catch-22 here because Eastbourne would have had no right to recover from JPMorgan anyway. In any event, the Court, having not reached the issue, expresses no opinion as to whether JPMorgan did or did not acquire the lease in the instant case.

Fidelity's assets to New Fidelity. *Id.* at 149-50.

After New Fidelity refused to make payments under the commercial lease, Old Stone sued New Fidelity and the FDIC under the lease, alleging that New Fidelity had assumed the lease pursuant to the purchase and assumption agreement and that it was, therefore, was liable to Old Stone under the lease. *Id.* at 151. The parties apparently agreed that the building was "Bank Premises" and that New Fidelity had the option to assume or reject the lease. *Id.* at 150-51. The dispute in that case involved whether New Fidelity had, in fact, exercised the option. *Id.* at 151. When New Fidelity challenged Old Stone's standing to enforce the purchase and assumption agreement, Old Stone responded that it had standing to enforce the PAA because the FDIC's alleged assignment of the lease to New Fidelity "created privity of estate between Old Stone [Bank] and New Fidelity." *Id.*

The Court rejected this argument, observing that "[i]n order for its theory to wash, Old Stone [had to] overcome the incredible hurdle of showing the Court how Old Stone Bank, a non-party to the Purchase and Assumption Agreement, derived any benefit or right from such Agreement." *Id.* at 152. The Court determined that "Old Stone simply [could] not meet this burden." *Id.* Moreover, in addition to rejecting Old Stone's privity-of-estate argument, the Court held that Old Stone was not a third-party beneficiary of the purchase and assumption agreement in light of the agreement's language "clearly disclaim[ing] any intention to confer rights upon

12

any third party."[10]  *Id.*  The Court, therefore, granted New Fidelity's motion for summary judgment and dismissed Old Stone's claims against New Fidelity on the lease.[11]  *Id.* at 154.

IV. Conclusion

In view of the foregoing, the Court concludes that Eastbourne has failed to state a claim for relief against JPMorgan. The Court, therefore, GRANTS JPMorgan's motion to dismiss.[12] *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."); *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008) (discussing the differences between prudential and constitutional standing). And because granting leave to amend would prove futile, no such leave will be granted. All claims in the above-styled and -numbered cause that

---

[10] The Court also determined that, even if Old Stone had established standing under the PAA, "New Fidelity would [have been] entitled to judgment as a matter of law because New Fidelity never took an assignment of the [lease]." *Old Stone*, 749 F. Supp. At 153.

[11] A number of other Courts, with facts even more similar to the instant case than those in *Old Stone*, have reached the same conclusion. *See Firestone Brookshire HE, LLC v. JPMorgan Chase Bank, N.A.*, No. 10-9155-VBF-FMOx (C.D. Cal. Mar. 18, 2011) (unpublished); *Interface Kanner, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 10-14068-CIV-GRAHAM/LYNCH (S.D. Fla. Mar. 18, 2011) (unpublished); *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 2:10-cv-01615-JHN-Shx (C.D. Cal. July 7, 2010) (unpublished). *But see 290 at 71, L.L.C. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. A-09-CA-576-SS, 2009 WL 3784347 (W.D. Tex. Nov. 9, 2009).

[12] In view of this ruling, the Court need not reach JPMorgan's remaining arguments in support of dismissal.

13

Eastbourne has asserted against JPMorgan are DISMISSED WITH PREJUDICE.

SIGNED July 27, 2011.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/dc                                    14

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document on July 29, 2011 using the ECF System, which will send notification to all parties of record.

/s/ Thomas M. Clark
Thomas M. Clark

NY\50967535.3