```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NEW CENTURY BANK d/b/a          :      CIVIL ACTION
CUSTOMERS BANK                  :
                                :
          v.                    :
                                :
OPEN SOLUTIONS, INC.            :      NO. 10-6537
```

MEMORANDUM

Bartle, J.                                              August 8, 2011

Before the court is the motion of the intervenor Federal Deposit Insurance Corporation ("FDIC") to dismiss the counterclaim that defendant Open Solutions, Inc. ("OSI") filed against plaintiff New Century Bank doing business as Customers Bank ("Customers") under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

I.

Following an expedited discovery period, Customers and OSI tried this case to the court on February 24, 2011.  On March 7, 2011, the court issued findings of fact and conclusions of law and entered judgment in favor of OSI on its counterclaim against Customers.  See New Century Bank v. Open Solutions, Inc., No. 10-6537, 2011 WL 780773, at *7-*9 (E.D. Pa. Mar. 7, 2011). Subsequently, the FDIC sought and the court granted it leave to intervene for the purposes of contesting this court's jurisdiction over OSI's counterclaim.

The court repeats only the facts that are necessary for present purposes. On July 9, 2010, USA Bank failed and was closed. The FDIC was appointed receiver, and on July 9, 2010, the FDIC and Customers entered into a Purchase and Assumption Agreement ("Purchase Agreement") in which Customers acquired substantially all of USA Bank's assets.

Under the terms of the Purchase Agreement, Customers acquired an option to assume service contracts to which USA Bank had been a party and an option to purchase or lease USA Bank's data processing equipment. Section 4.7 governed Customers' option on "Data Processing Equipment and Leases." Under this section, Customers had 90 days from July 9 to exercise an option to: "(i) accept an assignment from the [FDIC] of all leased Data Processing Equipment and (ii) purchase at Fair Market Value from the [FDIC] all owned Data Processing Equipment." A failure to give any notice to the FDIC within 90 days meant Customers had agreed to assume leases of such equipment and to purchase such equipment.

Section 4.8 of the Purchase Agreement applied "to agreements existing as of [USA Bank's] Closing which provide for the rendering of services by or to [USA Bank]." Section 4.8 required Customers to give the FDIC notice within 30 days of whether it would or would not assume such contracts. Section 4.8 further provided that Customers "shall be deemed by the [FDIC] to have assumed agreements for which no notification is timely given." The significant difference between § 4.7 and § 4.8 was

that Customers had 90 days to reject contracts governed by § 4.7 for "Data Processing Equipment and Leases" while it had only 30 days to reject contracts "for the rendering of services" encompassed by § 4.8.

Shortly after the Purchase Agreement was signed, the FDIC provided Customers with a list of contracts to which USA Bank had been a party and which identified the contracts with "index numbers." This list included a contract with OSI signed December 31, 2008 bearing index number 265. In addition to this list, the FDIC provided to Customers electronic files containing the contracts that corresponded to each index number. For the contract bearing index number 265, the electronic file Customers received contained not only the December 31, 2008 contract ("2008 Agreement") between USA Bank and OSI, but also an August 31, 2005 contract ("2005 Agreement").

The 2005 Agreement was signed between USA Bank and OSI's predecessor, BISYS Information Solutions, L.P. ("BISYS"). Entitled "Services Agreement," it obligated BISYS to provide USA Bank with certain data processing services in exchange for agreed-upon payments by USA Bank. OSI is the successor in interest to BISYS. Section XVI(A) of the 2008 Agreement, contained in the file marked index number 265, states that it "supersedes all existing agreements and all other oral, written or other communications between [the parties] concerning its subject matter."

On October 5, 2010, Customers requested a 30 day extension of the deadline under "Section 4.8(a)(i) of the Purchase and Assumption Agreement" to notify the FDIC whether it would assume "such agreements, which include the agreement dated December 31, 2008 between USA Bank and Open Solutions, Inc." The FDIC granted this request on October 7 but stated that it was extending the option period under § 4.7(a) for data processing equipment leases. At no time did the FDIC purport to extend the option period under § 4.8(a) for service contracts.

In late October and early November 2010, Customers prepared a series of draft letters stating it would not exercise its option to assume the contracts with OSI to which USA Bank had been a party. The FDIC reviewed and critiqued these drafts. On November 3, 2010, Customers formally sent a letter to the FDIC stating it would not assume USA Bank's contract with OSI. Neither the formal letter nor any draft specifically mentions the two distinct contracts, that is, the 2005 Agreement and the 2008 Agreement.

On November 9, 2010, the FDIC notified OSI by letter that the FDIC was disaffirming OSI's contract for "Services: Data Processing Services dated December 31, 2008." The repudiation is to be effective as of February 3, 2011. The letter makes no reference to the 2005 Agreement.

As noted above, the FDIC signed the Purchase Agreement with Customers on July 9, 2010. The 30-day period for rejection of contracts subject to § 4.8 expired on August 8, 2010, while

-4-

the 90-day rejection period for contracts under § 4.7 was originally set to expire on October 7, 2010 but was extended by the FDIC until November 6, 2010.

Customers filed suit alleging that OSI was wrongfully depriving Customers of access to the USA Bank data files stored on OSI's computer systems.  OSI counterclaimed for breach of the 2005 and 2008 Agreements and for a declaratory judgment that Customers has assumed those agreements.[1]  OSI alleged that Customers assumed both agreements by failing to notify the FDIC of its election to reject those agreements within the 30 day option period applicable to service contracts under § 4.8 of the Purchase Agreement.

Prior to trial, Customers moved to dismiss OSI's counterclaims.  It argued that OSI lacked standing to assert those claims and that the court lacked jurisdiction to hear them.  With regard to standing, we explained that § 4.8 of the Purchase Agreement, not § 4.7, applied to the 2005 and 2008 Agreements because they are service agreements and not leases of data processing equipment.  Taking all of OSI's alleged facts as true, we reasoned that Customers did not provide notice to the FDIC within the 30 day option period defined in § 4.8(a), and by operation of the Purchase Agreement, Customers had automatically assumed the 2005 and 2008 Agreements.  The court determined it

---

1. Before trial, OSI dismissed a third count of its counterclaim in which it sought to enforce an alleged settlement agreement between OSI and Customers.

would be inequitable to find that, having placed itself in privity of contract with OSI under the terms of the Purchase Agreement, Customers could avoid liability on those contracts by claiming OSI lacked standing to rely on the Purchase Agreement in pleading its claims.  See New Century Bank v. Open Solutions, Inc., No. 10-6537, 2011 WL 239652, at *2-*4 (E.D. Pa. Jan. 25, 2011).

With regard to jurisdiction, we disagreed with Customers' argument that we lacked jurisdiction to hear OSI's counterclaims under 12 U.S.C. §§ 1821(d)-(e).  Customers argued that OSI's counterclaim attempted to avoid provisions of federal law that require a failed bank's creditors to seek compensation from the FDIC if those creditors are aggrieved by the FDIC's repudiation of a contract.  Although we noted some limitations on our jurisdiction, we found the jurisdiction-stripping provision of § 1821(d)(13)(D) was inapplicable because OSI was pursuing damages against Customers, not the FDIC.  Id. at *4-*5.

On February 18, 2011, six days before trial was scheduled to begin, the FDIC sent OSI a letter concerning the "Repudiation of the Agreement with USA Bank dated June 10, 2005."[2]  The letter states that the FDIC was repudiating the 2005 Agreement "effective immediately."  The letter also discusses the FDIC's view of the relationship between the 2005 and 2008 Agreements:  "The FDIC as Receiver for USA Bank notes that the

---

2.  At trial, OSI attempted to introduce evidence about this letter, but the court refused to admit such evidence.

2008 Agreement with OSI contains language that it supersedes all other agreements with USA Bank and that it represents the entire agreement between the parties.  It is the position of the FDIC as Receiver for USA Bank that the 2008 agreement superseded the 2005 Agreement.  But to the extent the 2005 Agreement is operable currently, we repudiate it."

In our post-trial findings of fact and conclusions of law, we found that by failing to give the FDIC the required notice, Customers assumed both the 2005 and 2008 Agreements pursuant to § 4.8 of the Purchase Agreement.  We also found Customers had breached the 2005 Agreement by failing to make all payments required under the contract.[3]  The court entered judgment in favor of OSI and against Customers in the amount of $103,973.89.  See <u>New Century Bank v. Open Solutions, Inc.</u>, No. 10-6537, 2011 WL 780773, at *7-*9 (E.D. Pa. Mar. 7, 2011).

After obtaining leave to intervene, the FDIC filed the instant motion to dismiss for lack of subject matter jurisdiction.

II.

The FDIC argues that 12 U.S.C. § 1821(j) deprived this court of jurisdiction to adjudicate OSI's counterclaim against Customers.  Section 1821(j) states, "Except as provided in this section, no court may take any action, except at the request of

---

3.  The court precluded OSI from introducing any evidence of damages under the 2008 Agreement because OSI failed to produce that evidence in response to discovery requests from Customers.

-7-

the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." Among its powers as receiver, the FDIC has authority to repudiate a failed bank's contracts within a reasonable period. Id. at §§ 1821(e)(1)-(2). As receiver, the FDIC may repudiate contracts if it finds they are burdensome and that repudiating the contracts will promote an orderly resolution to a failed bank's affairs. Id. Significantly, Customers had not previously referenced § 1821(j).

Although occasionally referred to as an "anti-injunction" provision, § 1821(j) deprives the court of jurisdiction to award many forms of equitable relief. Hindes v. F.D.I.C., 137 F.3d 148, 159-60 (3d Cir. 1998). The statute itself encompasses more than injunctions by preventing courts from taking "any action ... to restrain or affect" the FDIC's exercise of its powers. 12 U.S.C. § 1821(j). Moreover, the Supreme Court observed in a similar context that "there is little practical difference between injunctive and declaratory relief," and several courts have held that § 1821(j) bars declaratory relief against the FDIC. California v. Grace Brethren Church, 457 U.S. 393, 407-11 (1982); see Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co., Case No. 08-2993, 2009 WL 3163557, at *5 (E.D. Pa. Oct. 1, 2009); Freeman v. F.D.I.C., 56 F.3d 1394, 1399 (D.D.C. 1995).

Further, the ouster of jurisdiction under § 1821(j) is not limited only to cases in which the FDIC is the party from

whom relief is sought.  Our Court of Appeals has held that § 1821(j) deprives the court of jurisdiction to enter orders against third parties "where the result is such that the relief restrain[s] or affect[s] the exercise of powers or functions of the [FDIC] as a conservator or a receiver," even though the order is not "directly aimed at" the FDIC.  Hindes, 137 F.3d at 160 (alterations in original) (emphasis removed); see also Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 707-08 (1st Cir. 1992).  Section 1821(j) applies when the relief contemplated against third parties would have a "dramatic and fundamental" effect on the FDIC's powers as receiver.  Hindes, 137 F.3d at 161.[4]

As noted above, the FDIC mailed OSI a letter on November 9, 2010 stating it repudiated the 2008 Agreement between USA Bank and OSI.  Then, on February 18, 2011, the FDIC sent OSI a second letter stating that the FDIC considered the 2005 Agreement superseded by the 2008 Agreement.  This second letter also repudiated the 2005 Agreement "to the extent the 2005 Agreement is operable currently."  In entering judgment in OSI's favor on its declaratory judgment and breach of contract claims, we found that Customers had assumed the 2005 and 2008 Agreements by failing to give the FDIC timely notice as required in § 4.8 of

---

4.  Our Court of Appeals limited the scope of its holding in Hindes, stating, "We do not suggest that we would reach the same result in a case in which the effect on the FDIC of an order against a third party would be of little consequence to its overall functioning as receiver."  Hindes, 137 F.3d at 161.

the Purchase Agreement.  We could conclude that Customers was a party to and liable under those agreements only if we also determined that those contracts had not been repudiated.[5]  Indeed, in its counterclaim, OSI described the FDIC's November 9, 2010 letter repudiating the 2008 Agreement as "an attempted, but invalid, repudiation of the 2008 Agreement."[6]  Although we did not say so outright, by concluding Customers was a party to the 2005 and 2008 Agreements, we implicitly determined the FDIC had not validly repudiated those agreements.

Section 1821(j) in our view deprives the court of jurisdiction to make that determination.  Subsequently declaring the FDIC's repudiation of a contract to be a nullity affects in a "dramatic and fundamental" way the FDIC's ability to wield its powers to resolve a failed bank's affairs.  12 U.S.C. § 1821(j); Hindes, 137 F.3d at 160-61; Telematics, 967 F.2d at 707-08.  By finding that Customers assumed the 2005 and 2008 Agreements, we declared that the FDIC had not repudiated those contracts.  In so doing, we exceeded our jurisdiction.

OSI argues that the FDIC lacked the power to repudiate either the 2005 or 2008 Agreements because, as the court found, the FDIC had already surrendered its interest in those agreements

---

5.  We entered judgment on OSI's breach of contract claim only as to the 2005 Agreement.  We found Customers had assumed both the 2005 and 2008 Agreements.

6.  In its counterclaim, OSI alleged that Customers repudiated the 2008 Agreement, but the facts at trial proved the repudiation letter came from the FDIC.

to Customers by the time the FDIC sent its repudiation letters. Although we were receptive to and persuaded by this argument in determining whether Customers had assumed the 2005 and 2008 Agreements, it is irrelevant to our jurisdictional analysis. Section 1821(j) prevents the court from restraining or affecting the FDIC if it is "colorably acting within its enumerated powers." Gross v. Bell Sav. Bank, 974 F.2d 403, 407-08 (3d Cir. 1992); see Volges v. Resolution Trust Corp., 32 F.3d 50, 52-53 (2d Cir. 1994); Ward v. Resolution Trust Corp., 996 F.2d 99, 103 (5th Cir. 1993); Telematics, 967 F.2d at 708.  We may restrain or affect the FDIC's exercise of its authority only when it "is acting clearly outside its statutory powers," and the existence of jurisdiction "does not hinge on our view of the proper exercise of" the FDIC's "otherwise-legitimate powers." Gross, 974 F.2d at 408.

In determining that the 2005 and 2008 Agreements were assets over which it remained receiver as of November 9, 2010, the FDIC was unquestionably exercising statutory powers.  As noted above, the court found that § 4.8, not § 4.7 of the Purchase Agreement applied to the 2005 and 2008 Agreements.  As a result, the court reasoned that the FDIC's interest in the 2005 and 2008 Agreements had ended by the time it attempted to repudiate those contracts.  Even if we were correct, the FDIC has since made its position clear in its February 18, 2011 letter. The position expressed in that letter demonstrates that the FDIC was not "acting clearly outside its statutory powers." Id.

We note that the FDIC has authority only to repudiate contracts within "a reasonable period" following its appointment as receiver for a failed bank. 12 U.S.C. § 1821(e)(2). Congress used the words "reasonable period" to give the FDIC flexibility in deciding when to repudiate contracts. Resolution Trust Corp. v. CedarMinn Bldg. Ltd. P'ship, 956 F.2d 1446, 1455-56 (8th Cir. 1992); see McCarron v. F.D.I.C., 111 F.3d 1089, 1094 (3d Cir. 1997). There may be circumstances in which the FDIC's repudiation of a contract would be so unreasonable in time that § 1821(j) would permit the FDIC's actions to be enjoined or declared invalid as an action wholly lacking statutory authority. In the circumstances of this case, the FDIC's repudiation of the 2005 and 2008 Agreements, in either November 2010 or February 2011, was not so unreasonable in time as to be outside the scope of its repudiation authority. See CedarMinn, 956 F.2d at 1456; N.H. Assoc. Ltd. P'ship v. F.D.I.C., 978 F. Supp. 650, 654 (D. Md. 1997) (gathering cases); see also Adagio Inv. Holding Ltd. v. F.D.I.C., 338 F. Supp. 2d 71, 82-84 (D.D.C. 2004). Because the FDIC was not "clearly acting outside its statutory powers," we lacked jurisdiction to declare void the FDIC's repudiations of the 2005 and 2008 Agreements. 12 U.S.C. § 1821(j); Gross, 974 F.2d at 407-08.

Finally, OSI argues that § 1821(j) does not limit this court's jurisdiction over claims for damages. See Hindes, 137 F.3d at 161. This argument falls short. OSI is correct that § 1821(j) does not prevent a court from exercising jurisdiction

over claims for damages against the FDIC.  See id.  OSI sought damages from Customers, however, not the FDIC.  As explained above, awarding relief on OSI's claim for damages against Customers required the court first to determine that the FDIC had not validly repudiated either the 2005 or 2008 Agreement.  Such a determination restrained or affected the FDIC's exercise of its statutory power to repudiate contracts, and as a result, was forbidden by § 1821(j).  Even if OSI's counterclaim could be read as seeking damages from the FDIC, § 1821(d)(13)(D) prevents the court from exercising jurisdiction over such a claim.  OSI has not filed the administrative claim for damages with the FDIC that is a prerequisite to the court exercising jurisdiction under § 1821(d)(13)(D).  See Rosa v. Resolution Trust Corp., 938 F.2d 383, 393-94 (3d Cir. 1991).

Accordingly, we will grant the motion of the FDIC to dismiss the counterclaim of OSI for lack of subject matter jurisdiction.